Opinion published February 25, 2010




















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-09-00760-CV
____________
 
CURTIS & WINDHAM ARCHITECTS, INC.,
RUSSELL WINDHAM, AND WILLIAM CURTIS, Appellants
 
V.
 
JOHN EDDIE WILLIAMS AND SHERIDAN WILLIAMS, Appellees
 

 
 
On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2009-35322
 

 
 
O P I N I O N
In this interlocutory appeal,


 appellants, Curtis & Windham Architects, Inc.,
Russell Windham, and William Curtis (collectively “C&W”) challenge the trial court’s
order denying its motion to dismiss the counterclaims and third-party petition for
damages of appellees, John Eddie Williams and Sheridan Williams. In its sole issue,
C&W contends that the trial court erred in not dismissing the Williamses’
counterclaims and third-party claims, which arose out of C&W’s provision of
architectural services to the Williamses.



We affirm the order of the trial court.
Background
In its original petition, C&W alleges that the Williamses retained C&W to
provide “architectural services in connection with the design, construction and
landscaping of a proposed residence.” C&W explained to the Williamses that, on a
monthly basis, it would “bill[] for its time on a hourly basis according to a schedule
of hourly rates that was provided to the Williams[es].” The Williamses “agreed to
proceed on this basis and to pay C&W’s monthly invoices for hourly fees and
expenses.” C&W explained to the Williameses that “its fees typically run in the range
of 12 to 15% of the project’s construction costs.” The Williamses paid all invoices
between February 2008 and March 2009 but refused to pay the April 2009 invoice in
the amount of $47,103.49. C&W also alleges that the fees and expenses were “not
insubstantial, but the amount was driven, in large part, by the expansive scope of the
project specified by [the] Williams[es] and by the countless changes they requested.” 
Payment was due on May 22, 2009, but the Williamses did not pay and instructed
C&W to stop work on the residence, which it did. C&W further alleges that the “April
2009 invoice in the amount of $47,103.49 is just, due and owing” and the Williamses’
failure to pay constituted a breach of contract.
In their original answer, the Williamses specifically deny that the amount owed
on the April 2009 invoice is “just, due, and owing.” They assert the affirmative
defenses of “breach of fiduciary duty,” “fraudulent acts, specifically, but without
limitation, C&W’s fraudulent billing practices,” “waiver, ratification, . . .
acquiescence,” lack of a written contract, and, alternatively, C&W’s prior breach of
the contract, statute of frauds, laches, unclean hands, and equitable estoppel. 
The Williamses assert counterclaims against C&W for (1) breach of fiduciary
duty because C&W’s invoices “reflect hours billed that cannot be reconciled with
C&W’s actual work product,” “C&W’s project design was and is materially
inconsistent with the design parameters established by the Williams[es],” and C&W
failed to provide an accounting upon request to support its invoices; (2) fraud because 
C&W “pervasive[ly] and systemic[ally] overbill[ed] the Williams[es],” C&W “either
knew [its] invoices were over-stated, or was reckless about the accuracy of the
information contained in the invoices,” and C&W had a “duty to disclose to the
Williams[es] that C&W was seeking to bill 15-18% of construction costs”; (3)
deceptive trade practices based on C&W’s engaging in “false and misleading acts
related to its billing practices and through its failure to disclose . . . that C&W was
seeking to bill the project as if the Williams[es] had agreed to a percentage contract”;
(4) unjust enrichment because C&W has been paid “nearly $1 million and [the
Williamses] have received little or no tangible benefit”; (5) damages incurred as a
result of C&W’s frivolous lawsuit against the Williamses because it failed “to disclose
in its pleadings that it has already offered to credit the purported balance owed by
more than the amount claimed”; and (6) a declaration that C&W’s “architectural
designs . . . are not protected as original works . . . and/or the Williams[es] should have
the full right to use the designs.” The Williamses also filed a third-party petition
alleging the same claims against Russell Windham and William Curtis individually. 
In their counterclaims and third-party petition, the Williamses specifically allege
that C&W held “itself out as a premier architectural firm . . . [with an] ability to
develop ‘design solutions that are appropriate for their context and that serve the
programmatic requirements and budgets of [their] clients.’” Based on C&W’s “design
excellence,” the Williamses hired C&W as their architects. The Williamses believed
that C&W was “operating in a fiduciary capacity,” would perform work as instructed
by the Williamses using the design criteria and other information supplied by the
them, and they would be charged only for work “actually performed.” However,
C&W “fundamentally ignored much of the design criteria and information supplied
by the Williams[es] and billed almost $1 million for an overall design that is not
consistent with the [Williamses’] instructions.” They also allege that Mr. Williams
had engaged an attorney to draft a contract to govern the engagement but the contract
was never executed. The Williamses further allege that as of March 2009, they had
paid C&W “$926,232.51 . . . that only represented 40% of the total architectural
costs.” The Williamses then learned that “C&W had apparently been striving to bill
15-18% of the anticipated construction costs in lieu of simply billing hours on
authorized and necessary work” and C&W’s design “was inconsistent with the design
parameters provided by the Williams[es].” After the Williamses conveyed their
disappointment to C&W, it offered to refund the “landscape architect fees of
$113,883.75.” On May 22, 2009, the Williamses served a “written demand letter on
C&W, demanding a full refund.” 
C&W moved to dismiss the Williamses’ counterclaims and third-party petition
on the ground that the Williamses had filed claims accusing it of “wrongful conduct
in the provision of professional services, but their [counterclaims and third-party
petition were] not accompanied” by a certificate of merit, i.e., an affidavit of a third-party licensed architect describing the factual bases for their claims.


 The trial court
denied C&W’s motion. 
Standard of Review
We review a trial court’s decision to deny a motion to dismiss for failure to file
a certificate of merit under an abuse of discretion standard. Consol. Reinforcement,
L.P. v. Carothers Executive Homes, Ltd., 271 S.W.3d 887, 891 (Tex. App.—Austin
2008, no pet.); Criterium-Farrell Eng’rs v. Owens, 248 S.W.3d 395, 397 (Tex.
App.—Beaumont 2008, no pet.); Palladian Bldg. Co. v. Nortex Found. Designs, Inc.,
165 S.W.3d 430, 433 (Tex. App.—Fort Worth 2005, no pet.). A trial court abuses its
discretion “if it acts in an arbitrary or unreasonable manner without reference to
guiding rules and principles.” See Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex.
1999). When reviewing matters committed to the trial court’s discretion, we may not
substitute our own judgment for that of the trial court. Bowie Mem’l Hosp. v. Wright,
79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely
because it decides a discretionary matter differently than an appellate court would in
a similar circumstance. Gray v. CHCA Bayshore L.P., 189 S.W.3d 855, 858 (Tex.
App.—Houston [1st Dist.] 2006, no pet.). However, a trial court has “no discretion
in determining what the law is or in applying the law to the facts.” Walker v. Packer,
827 S.W.2d 833, 840 (Tex. 1992); Baylor Univ. Med. Ctr. v. Biggs, 237 S.W.3d 909,
916 (Tex. App.—Dallas 2007, pet. denied).
We review matters of statutory construction de novo. City of San Antonio v.
City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003). In construing statutes, our primary
goal is to determine and give effect to the legislature’s intent. Id. We begin with the
plain language of the statute at issue and apply its common meaning. Id. Where the
statutory text is unambiguous, we adopt a construction supported by the statute’s plain
language, unless that construction would lead to an absurd result. Fleming Foods of
Tex., Inc. v. Rylander, 6 S.W.3d 278, 284 (Tex. 1999). “Once we determine the
statute’s proper construction, we must then decide whether the trial court abused its
discretion in applying the statute.” Owens, 248 S.W.3d at 397.Certificate of Merit
In its sole issue, C&W argues that the trial court erred in not dismissing the
Williamses’ counterclaims and third-party petition because the Williamses’ claims
“arose out of the provision of professional services by a licensed architect,” and the
Williamses “did not file a certificate of merit setting forth ‘at least one negligent act,
error, or omission claimed to exist and the factual basis for each such claim.’” See Act
of May 18, 2005, 79th Leg., R.S., ch. 208, 2005 Tex. Gen. Laws 369, 370 (amended
2009) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 150.002 (Vernon
Supp. 2009)). 
          The 2005 version of section 150.002, which is applicable to this case and
entitled “Certificate of Merit,” provided,(a)     In any action or arbitration proceeding for damages arising out of
the provision of professional services by a licensed or registered
professional, the plaintiff shall be required to file with the
complaint an affidavit of a third-party licensed architect . . .
competent to testify, holding the same professional license as, and
practicing in the same area of practice as the defendant, which
affidavit shall set forth specifically at least one negligent act,
error, or omission claimed to exist and the factual basis for each
such claim. The third-party . . . licensed architect shall be licensed
in this state and actively engaged in the practice of architecture 
. . . .
 
. . . .
 
(d)     The plaintiff’s failure to file the affidavit . . . shall result in
dismissal of the complaint against the defendant. This dismissal
may be with prejudice.
 
Id. (emphasis added). Here, C&W and the Williamses disagree as to whether the
Williamses’ claims “arise out of the provision of professional services by a licensed
architect” such that those claims are subject to the affidavit requirement in section
150.002(a). 
          C&W argues that because the Williamses’ “counterclaims and third-party claims
arise out of the provision of architectural professional services,” the Williamses “were
required to file with [their] petition an affidavit . . . from a third-party licensed
architect setting forth at least one negligent act, error or omission claimed to exist and
the factual basis for each such claim.” C&W emphasizes that “the statute was
amended in 2005 to broaden its application from claims for ‘damages alleging
professional negligence’ to claims for damages ‘arising out of the provision of
professional services.’” C&W asserts that the 2005 version of section 150.002
requires that for the Williamses “to assert any cause of action arising out of the
provision of professional services by a licensed or registered professional—whether
the allegations are based on negligence or intentional acts—the Williamses must come
forward with at least proof of [or at a minimum] the lesser offense of negligence—that
is, [C&W’s] professional services fell below the applicable standard of care.” The
Williamses counter that because their claims arise out of “C&W’s alleged overbilling,”
they were not required to file a certificate of merit with their counterclaims and third-party petition.
          In 2005, the legislature amended section 150.002 to apply to actions “arising out
of the provision of professional services.” Id. However, the Austin, San Antonio, and
Corpus Christi Courts of Appeals have concluded that no certificate of merit is
required under the 2005 version of section 150.002 when the plaintiff does not allege
“a negligent act, error or omission.” Landreth v. Las Brisas Council of Co-Owners,
285 S.W.3d 492, 500 (Tex. App.—Corpus Christi 2009, no pet.); Consol.
Reinforcement, L.P., 271 S.W.3d at 892; Kniestedt v. Southwest Sound and Elecs.,
Inc., 281 S.W.3d 452, 455 (Tex. App.—San Antonio 2007, no pet.). The plain
wording of the 2005 version of section 150.002 necessarily leads to this conclusion
because otherwise the legislature would not have specified that the affidavit “shall set
forth specifically at least one negligent act, error, or omission claimed to exist.” Act
of May 18, 2005, 79th Leg., R.S., ch. 208, 2005 Tex. Gen. Laws 370 (amended 2005). 
Because a straight-forward reading of the 2005 version of section 150.002 reveals that
the filing of a certificate of merit is not required for causes of action that do not allege
a negligent act, error, or omission, we, along with our sister courts of appeal, decline
to expand the scope of the 2005 version of section 150.002 to causes of action
“generally arising from” services provided by licensed engineers and architects. 
Consol. Reinforcement, L.P., 271 S.W.3d at 892. Accordingly, we hold that the 2005
version of section 150.002 does not apply in a suit other than one for negligent acts,
errors, or omissions arising out of the provision of professional services. See id.; 
Landreth, 285 S.W.3d at 500; Kniestedt, 281 S.W.3d at 455. 
          We note that the practice of architecture is defined as “a service or creative
work applying the art and science of developing design concepts, planning for
functional relationships and intended uses, and establishing the form, appearance,
aesthetics, and construction details for the construction . . . of a building or environs
intended for human use or occupancy, the proper application of which requires
education, training, and experience in those matters.” Tex. Occ. Code Ann. §
1051.001(7) (Vernon Supp. 2009). Thus, if a plaintiff’s claim for damages does not
implicate the special knowledge and training of an architect, it cannot be a claim for
damages arising out of the provision of professional services. See Consol.
Reinforcement, L.P., 271 S.W.3d at 894.



          In Consol. Reinforcement, L.P., Carothers Executive Homes filed claims against
Consolidated, an engineering firm, for breach of contract, deceptive trade practices,
and breach of warranty regarding Consolidated’s “design and construct[ion of the
buildings’] foundations.” 271 S.W.3d at 890. The Austin Court of Appeals reasoned
that: 
[Plaintiff’s non-negligent causes of action] do not implicate a
professional engineer’s education, training, and experience in applying
special knowledge or judgment. An affidavit of a licensed or registered
professional setting forth the negligent act, error, or omission and factual
basis for each appears irrelevant to claims that do not arise from the
provision of professional services. We believe the non-negligence causes
of action did not require a certificate of merit.
 
Id. at 894 (quoting Gomez v STFG, Inc., No. 04-07-00223-CV, 2007 WL 2846419, at
*2–3 (Tex. App.—San Antonio Oct. 3, 2007, no pet.)).
          Likewise, the Williamses’ causes of action do not implicate a professional 
architect’s “education, training, and experience” in applying “special knowledge or
judgment.” The gist of the Williamses’ claims, which are made in response to C&W’s
breach of contract claim for the Williamses’ non-payment of fees, is that C&W
engaged in “pervasive and systemic overbilling.” The Williamses’ claims for damages
for breach of fiduciary duty, fraud, deceptive trade practices, unjust enrichment, and
the filing of a frivolous lawsuit against them and their request for a declaratory
judgment do not implicate a negligent act, error, or omission by C&W. It simply
makes no sense to require an affidavit of a licensed or registered professional setting
forth “at least one negligent act, error, or omission claimed to exist and the factual
basis for each such claim” when, in fact, a plaintiff’s causes of action do not concern
negligence. Accordingly, we hold that the Williamses were not required to file a
certificate of merit with their claims and the trial court did not err in denying C&W’s
motion to dismiss.
We overrule C&W’s sole issue.Conclusion
We affirm the order of the trial court.
 
 
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Justices Jennings, Higley, and Sharp.