Opinion issued May 20, 2010 

 




 







In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00896-CV

____________


UOP, L.L.C. F/K/A UNIVERSAL OIL PRODUCTS, Appellant


V.


SHANDA KOZAK, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE HEIRS AND ESTATE OF WALTER
SCIFRES, DECEASED, AND KEITH SCIFRES, Appellees


* * *


SHANDA KOZAK, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE HEIRS AND ESTATE OF WALTER
SCIFRES, DECEASED, AND KEITH SCIFRES, Appellants


V.


UOP, L.L.C. F/K/A UNIVERSAL OIL PRODUCTS, Appellee






On Appeal from the 11th District Court

 Harris County, Texas

Trial Court Cause No. 2008-17991






MEMORANDUM OPINION


 By motion to dismiss and motion for summary judgment, Universal Oil
Products, L.L.C. ("UOP") moved against all claims asserted by Shanda Kozak,
individually and as personal representative of the heirs and estate of Walter Scifres,
deceased, and Keith Scifres ("the Kozak Plaintiffs") on the basis that the Kozak
Plaintiffs had failed to obtain a certificate of merit (dismissal motion) and on the
claims' merits or on the basis of the statute of repose (summary-judgment motion). 
By two interlocutory orders, the trial court dismissed or rendered judgment on all of
the Kozak Plaintiffs' claims against UOP, except for a claim based on UOP's alleged
failure to warn of the dangers of asbestos. Both parties appeal the ruling on the
motion to dismiss. See Tex. Civ. Prac. & Rem. Code Ann. § 150.002(f) (Vernon
Supp. 2009). We affirm the order in part, reverse it in part, and remand the case with
instructions.

BACKGROUND

 Walter Scifres worked at the Sun Oil refinery in Duncan, Oklahoma for several
decades. The Kozak Plaintiffs alleged that UOP designed the Sun Oil refinery and
acted afterwards as a general contractor at the refinery facility. In 2005, Walter died
of mesothelioma, a form of cancer usually linked to asbestos exposure. 

A. The Pleadings

 Two years after Walter's death, the Kozak Plaintiffs, many of whom were his
heirs, filed suit against UOP and another defendant who is not a party to this appeal
under a variety of theories. Their first amended petition, the "live" pleading at the
time of the dismissal ruling, asserted some allegations against UOP, some against the
other defendant, and some against both defendants.

 In the section of the first amended petition relating exclusively to UOP, the
Kozak Plaintiffs claimed that UOP had "acted as an engineering design service
provider [and] acted as a general contractor during construction by handling the bid
process, evaluating the bids and communicating with the bid winner." The petition
then alleged a claim against UOP for the failure to warn of the dangers of asbestos,
in UOP's capacities both as designer and general contractor. The specifics of this
claim will be set out further below. The petition also asserted claims against both
defendants for gross negligence, fraud, conspiracy, and loss of consortium.

B. The Motion to Dismiss

 UOP filed a "Motion to Dismiss for Failure to File a Certificate of Merit all
Claims Brought by Plaintiffs," as required under former section 150.002 of the Texas
Civil Practice and Remedies Code. See Act of May 18, 2005, 79th Leg., R.S., ch.
208, § 2, 2005 Tex. Gen. Laws 369, 370 (amended 2009) (current version at Tex.
Civ. Prac. & Rem. Code Ann. § 150.002(a) (Vernon Supp. 2009)). The only
evidence submitted in support was the affidavit of an employee, who averred:

 UOP LLC is a limited liability company that employs licensed
professional engineers who provide chemical and process engineering
services for refineries. For more than ninety years, UOP has been
developing licensing process technology for the refining industry. To
develop its proprietary information, UOP employs licensed professional
engineers to generate refinery process designs and refinery process
technology.


At the hearing on the motion, the trial court granted the Kozak Plaintiffs an extra two
weeks either to obtain a certificate of merit or "to come up with a real good cause"
why they could not produce one.

 The Kozak Plaintiffs did not procure a certificate of merit, but instead moved
for leave to avoid filing one because the facility no longer existed. Alternatively, they
asserted that they had sued UOP "under theories of negligence, gross negligence, and
strict liability"; that the certificate requirement applied only to negligence claims, not
non-negligence claims or claims not arising out of the provision of professional
services; that UOP had acted not simply as a designer, but also "as a general
contractor who purchased and supplied the asbestos-containing products to which
[the decedent] was exposed"; and that the certificate requirement did not apply to
their claims based on UOP's "negligent conduct in its capacity as a general contractor
and in its failure to warn." In its response, UOP argued that former section 150.002
did not give the trial court discretion to waive the certificate, that it had provided only
professional engineering design services, that UOP had never worked as a general
contractor, and that the Kozak Plaintiffs were attempting to "plead their way" out of
the requirement. However, UOP did not produce any evidence in support of its
factual assertions.

 The trial court ruled on both parties' motions on September 26, 2008. First, the
trial court ruled that former section 150.002 was procedural, implicitly recognizing
that it applied to the case. Second, the court ruled that UOP's motion to dismiss
"should be GRANTED in part and DENIED in part . . . ." The portion of the motion
that was granted was as follows: 

 [UOP's] Motion to Dismiss for Failure to File a Certificate of Merit is
GRANTED with respect to [Plaintiffs'] claims for the personal injuries
and wrongful death of Walter Scifres that arise from UOP's provision
of professional engineering services for the Sunray/Sun Oil refinery . . .
and are dismissed with prejudice.


Third, the trial court denied the Kozak Plaintiffs' request to avoid filing a certificate
of merit. 

 The order did not identify which claims were those "aris[ing] from UOP's
provision of professional services." However, when the parties' motions and
responses are read together with the order, it appears that the trial court dismissed
only those claims against UOP that arose out of its provision of professional services
as an engineering designer, rather than as a general contractor, and that the failure-to-warn claim survived to some extent. This interpretation of the September 26 order
is supported by the parties' subsequent actions, discussed below. 

C. Summary Judgment and the Second Amended Petition

 On the same day that the dismissal order was signed, UOP filed a motion for
summary judgment against what it identified as the Kozak Plaintiffs' remaining
claims. In that motion, UOP asserted that the Kozak Plaintiffs' "negligence claims
that UOP acted as a general contractor, products liability and failure to warn,
conspiracy, malice, and gross negligence . . . as well as derivative claims relating
thereto, remain[ed] pending against UOP" after the dismissal order. (Emphasis
added.) It is somewhat unclear from this pleading whether UOP construed the
failure-to-warn claim that remained after dismissal as being asserted against UOP
only in its capacity as general contractor or also in its capacity as designer. The
Kozak Plaintiffs' response asserted that UOP performed services at the refinery that
"are separate and apart from . . . UOP's professional engineering services and . . .
UOP is subject to liability for [its] negligent actions and failure to warn in this
capacity." (Emphasis added.) These pleadings indicate that the parties believed that
the failure-to-warn claim survived dismissal at least to the extent that it was alleged
against UOP in its capacity as a general contractor, if not also in its capacity as
designer.

 On October 17, 2008, the trial court "granted [UOP's summary-judgment]
Motion in all respects, except for failure to warn." (Emphasis added.) The trial court
did not specify whether it was refusing to render judgment on the failure-to-warn
claim asserted against UOP in its capacity as designer, in its capacity as general
contractor, or in both capacities.

 The Kozak Plaintiffs' summary-judgment response recited that they had filed
a second amended petition on October 16, 2008, the day before the summary-judgment ruling. However, the petition was not file-stamped until October 20, 2008,
three days after that ruling. The second amended petition reasserted the failure-to-warn claim against UOP in both of its capacities, but added allegations of additional
general consulting work that UOP had performed over several decades. 

D. The Appeals

 On October 27, 2008, UOP appealed both the October 17 summary-judgment
order and the September 26 dismissal order. (1) By cover letter dated November 7,
2008, the Kozak Plaintiffs mailed their notice of "cross-appeal" to the clerk; that
notice of appeal was filed on November 12, 2008. (2)

PRELIMINARY MATTERS


 We address three preliminary matters before reaching the appeals' merits.

 First, Section 150.002 of the Texas Civil Practice and Remedies Code
authorizes an interlocutory appeal relating only to "an order granting or denying a
motion for dismissal" for failure to obtain the certificate. Tex. Civ. Prac. & Rem.
Code Ann. § 150.002(f). No other statute or rule makes the interlocutory summary-judgment order of October 17, 2008 appealable at this time. Accordingly, we may
review only the September 26, 2008 order on UOP's motion to dismiss in this appeal,
not the ruling on its motion for summary judgment. Both parties have raised
arguments concerning the merits of the remaining failure-to-warn claim, specifically,
whether UOP had a duty to warn under Oklahoma law. Because this issue relates to
the interlocutory summary-judgment ruling, we cannot address it in this interlocutory
appeal. 

 Second, UOP did not move to strike, or reassert its motion to dismiss with
respect to, the second amended petition's failure-to-warn claim alleged against UOP
in its designer and contractor capacities. On appeal, both parties implicitly assume
that UOP may nonetheless pursue its appellate challenges to the dismissal ruling. 
Because the parties assume this, so do we. We do not address what effect, if any, the
filing of the second amended petition had on the prior dismissal ruling. However, for
purposes of our review, we consider only the first amended petition's allegations, as
this was the live pleading at the time of the trial court's ruling on the dismissal
motion. 

 Third, in their challenges to the dismissal ruling, both parties rely on summary-judgment evidence that was not proffered in conjunction with UOP's motion to
dismiss and which was not before the trial court when it ruled on that motion. We
may not consider this summary-judgment evidence in our analysis. See Methodist
Hosps. of Dallas v. Tall, 972 S.W.2d 894, 898 (Tex. App.--Corpus Christi 1998, no
pet.) ("It is axiomatic that an appellate court reviews actions of a trial court based on
the materials before the trial court at the time it acted.").

STANDARD OF REVIEW

 We review an order pursuant to section 150.002 for abuse of discretion. See
Curtis & Windham Architects, Inc. v. Williams, No. 01-09-00760-CV, 2010 WL
670584, at *2 (Tex. App.--Houston [1st Dist.] Feb. 25, 2010, no pet. h.). A trial
court abuses its discretion when it acts arbitrarily or unreasonably, without reference
to guiding rules and principles. Id. 


ANALYSIS

 In the sole issue in their appeal, the Kozak Plaintiffs contend that they should
be excused from the certificate requirement because the facility in question no longer
exists, and they contend that it was error to conclude otherwise. In the sole issue in
its appeal, UOP contends that the trial court abused its discretion by not dismissing
the remaining failure-to-warn claim.

 The applicable version of former section 150.002 provides, in relevant part: 

 § 150.002. Certificate of Merit


 (a) In any action . . . for damages arising out of the provision of
professional services by a licensed or registered professional, the
plaintiff shall be required to file with the complaint an affidavit
of a third-party . . . licensed professional engineer competent to
testify, holding the same professional license as, and practicing in
the same area of practice as the defendant, which affidavit will set
forth specifically at least one negligent act, error, or omission
claimed to exist and the factual basis for each such claim. . . .


(b) The contemporaneous filing requirement of Subsection (a) shall
not apply to any case in which the period of limitation will expire
within 10 days of the date of filing and, because of such time
constraints, the plaintiff has alleged that an affidavit . . . could not
be prepared. In such cases, the plaintiff shall have 30 days after
the filing of the complaint to supplement the pleadings with the
affidavit. The trial court may, on motion, after hearing and for
good cause, extend such time as it shall determine justice
requires.


. . . .


(d) The plaintiffs failure to file the affidavit in accordance with
Subsection (a) or (b) shall result in dismissal of the complaint
against the defendant. This dismissal may be with prejudice. 

Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348; 
Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370
(emphasis added) (amended 2009). 

A. Waiver of Certificate of Merit (The Kozak Plaintiffs' Appeal)

 By its plain language, the certificate-of-merit statute is compulsory, not
discretionary. Although the statute gives the trial court discretion to allow a plaintiff
more time in which to obtain the certificate in the one circumstance identified, it does
not grant the trial court discretion to waive the requirement altogether, and it
mandates dismissal of any claims for which a certificate is required and not produced. 
We thus hold that the trial court did not err in denying the Kozak Plaintiffs' motion
for leave to avoid filing a certificate of merit.

 We overrule the sole issue in the Kozak Plaintiffs' appeal.

B. Failure-to-Warn Claim (UOP's Appeal)

 In its ruling on UOP's motion to dismiss, the trial court refused to dismiss,
among other claims, the Kozak Plaintiffs' claim for failure to warn of the dangers of
asbestos. On appeal, UOP challenges the refusal to dismiss only this claim; it does
not challenge the denial of its request to dismiss any other claim. We thus consider
the propriety of the trial court's ruling on the motion to dismiss only with respect to
the failure-to-warn claim. See Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993)
("We have held repeatedly that the courts of appeals may not reverse the judgment
of a trial court for a reason not raised in a point of error.").

 1. The Law

 Former section 150.002(a) requires a certificate of merit only in actions or
arbitration proceedings "for damages arising out of the provision of professional
services by a licensed or registered professional . . . ." Act of May 12, 2005, 79th
Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348; Act of May 18, 2005, 79th
Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370. In determining what "the
provision of professional [engineering] services" in former section 150.002(a) means,
we are guided by the Texas Occupation Code's definition of the practice of
engineering. See Ashkar Eng'g Corp. v. Gulf Chem. & Metallurgical Corp., No. 01-09-00855-CV, 2010 WL 376076, at *9 (Tex. App.--Houston [1st Dist.] Feb. 4, 2010,
no pet.) (memo. op.) (looking to Texas Occupation Code to ascertain same issue, with
respect to practice of engineering); see also Williams, 2010 WL 670584, at *4 (same,
with respect to practice of architecture). The Occupation Code defines the practice
of engineering as "the performance of . . . any public or private service or creative
work, the adequate performance of which requires engineering education, training,
and experience in applying special knowledge or judgment of the mathematical,
physical, or engineering sciences to that service or creative work." Tex. Occ. Code
Ann. § 1001.003(b) (Vernon Supp. 2009). The practice of engineering includes,
among other things, design of engineering works or systems; engineering for
construction of real property; engineering for preparation of operating or maintenance
manuals; and "any other professional service necessary for the planning, progress, or
completion of an engineering service." Id. § 1001.003(c). 

 Based on the definitions provided in the Occupation Code, and the plain
language of former section 150.002(a), a claim for damages asserted against a
professional engineer arises out of the provision of professional services (and thus
requires a certificate of merit) if the claim implicates the engineer's education,
training, and experience in applying special knowledge or judgment. See Gomez v.
STFG, Inc., No. 04-07-00223-CV, 2007 WL 2846419, at *3 (Tex. App.--San
Antonio Oct. 3, 2007, no pet.) (memo. op.) (holding that claims for tortious
interference, conspiracy, breach of contract, wrongful termination, and breach of
fiduciary duty, loyalty, and good faith and fair dealing did not require certificate of
merit because they did not "implicate a professional engineer's education, training,
and experience in applying special knowledge or judgment."). Conversely, "if a
plaintiff's claim for damages does not implicate the special knowledge and training
of [the subject professional], it cannot be a claim for damages arising out of the
provision of professional services." Williams, 2010 WL 670584, at *4.


 Additionally, because former section 150.002(a) also requires that the
certificate of merit "set forth specifically at least one negligent act, error, or omission
claimed to exist and the factual basis for each such claim," this Court recently held
in Williams that the statute's certificate requirement "does not apply in a suit other
than one for negligent acts, errors, or omissions arising out of the provision of
professional services." Id. We reasoned that "[i]t simply makes no sense to require
an affidavit of a licensed or registered professional setting forth 'at least one
negligent act, error, or omission claimed to exist and the factual basis for each such
claim' when, in fact, a plaintiff's causes of action do not concern negligence." Id. at
*5. However, in determining whether a claimant is asserting a claim for such
negligent acts, errors, or omissions, we are not bound by the labels that the claimant
applies to its claim. See Ashkar Eng'g Corp., 2010 WL 376076, at *8. "Rather, we
look to the pleadings to determine the nature of the claims asserted." Id. 

 2. Application

 We must determine whether a claim for failure to warn of the dangers of
asbestos as pleaded in this case against an alleged general contractor and
consultant--UOP, which had previously provided engineering design services--is
a claim for negligent acts, errors, or omissions arising out of the provision of
professional services that implicated UOP's engineering education, training, and
experience in applying its special knowledge or judgment. 

 Against UOP, which was sued "as a Contractor Defendant," the Kozak
Plaintiffs alleged:

 18. . . . [UOP] designed and provided the specifications for [the
refinery] . . . . In that capacity, [UOP] acted as an engineering design
service provider [and] acted as a general contractor during construction
by handling the bid process, evaluating the bids and communicating
with the bid winner, reviewed and approved Operation and Maintenance
Manuals, evaluated the efficiency of the equipment and made
recommendations for improving operations of the powerhouse(s).

 

The first amended petition thus alleged two categories of claims against UOP: (1)
those asserted against it in capacity as designer, and (2) those asserted against it in its
capacity as a general contractor. 

 In both of these capacities, UOP was sued for failure to warn of the dangers of
asbestos-containing equipment, materials, or machinery:

 19. As the refinery's designer, Defendant [UOP] was responsible for
the selection of equipment and materials to be used to operate the
refinery. This included decisions regarding the manufacture of the
equipment that was installed in the refinery, the equipment's placement,
and how the equipment would be insulated. Further, [UOP] was
responsible for ordering and installing the equipment and all
appurtenances to that equipment.


 20. [UOP] owed a duty of care to the men and women who worked in
the Sunray/Sun Oil refinery it designed. Plaintiff contends that [UOP]
was negligent in its performance of its duty in that it failed to protect
workers such as Plaintiff from the hazards of asbestos that [UOP]
specified and approved for use in the Sunray/Sun Oil refinery. If [UOP]
had exercised due care and used the knowledge of an expert that it is
presumed to have had, it would have known that asbestos insulation,
gaskets and packing were hazardous to the health of the Sunray/Sun Oil
refinery workers and should not have specified such material or required
the placement of warnings concerning the health hazards of asbestos
exposure on all asbestos-containing products, and on all machinery or
equipment insulated with or containing such products. The Plaintiff,
and all similar refinery workers, relied upon the expertise of [UOP] in
designing the Sunray/Sun Oil refinery to be as safe and free of hazards
as possible, and [UOP] breached that duty by specifying asbestos
containing products including insulation products despite knowledge of
the hazards of asbestos, and by failing to require warnings.


 21. Further, [UOP] was responsible for the actual procurement of the
same equipment described above. [UOP] was responsible for assuring
that the installation, operation and maintenance manuals for the
equipment in question provided safe and effective techniques to avoid
the hazards posed by working on the material and equipment in closed,
confined spaces, and thus should have required the placement of
warnings concerning the health hazards of asbestos exposure on all
asbestos-containing products, and on all machinery or equipment
insulated with or containing such products.


(Emphasis added.)

 a. whether the failure-to-warn claim was one "arising out of the
provision of professional services"


 The Kozak Plaintiffs alleged that it was UOP's knowledge of the dangers of
asbestos (and its failure to warn of them despite that knowledge) that underlay its
liability. The basis for UOP's knowledge, as alleged, was its expertise as a designer
of the unit and as an "expert." For example, in their first amended petition and with
respect to their failure-to-warn claim alleged against UOP as a designer, the Kozak
Plaintiffs alleged that if "[UOP] had exercised due care and used the knowledge of
an expert that it is presumed to have had, it would have known that asbestos
insulation, gaskets and packing were hazardous . . . ." They also alleged that the
refinery workers "relied on the expertise" of UOP "in designing the [refinery] to be
as safe and free of hazards as possible" and that UOP "breached that duty by
specifying asbestos containing products . . . despite knowledge of the hazards of
asbestos and by failing to require warnings." Although their allegations in the first
amended petition against UOP as a contractor did not state the basis for UOP's
knowledge of the danger of asbestos, the basis had to be the same. The alleged
source of UOP's knowledge concerning asbestos--the engineering expertise that
allowed it to design the refinery--was thus the same regardless of the capacity in
which UOP was sued. 

 Former 150.002(a) requires a certificate of merit if a claim for damages
implicates a professional engineer's education, training, and experience in applying
special knowledge or judgment. See Gomez, 2007 WL 2846419, at *3; see also Tex.
Occ. Code Ann. § 1001.003(b). As pleaded here, the failure-to-warn claim alleged
against UOP in either capacity implicated UOP's engineering education, training, and
experience because it was premised on knowledge of asbestos that UOP was alleged
to have had from its design experience. That is, it was this engineering expertise that
underlay UOP's liability for having failed to warn--whether UOP failed to warn of
asbestos's dangers when it designed the refinery or when it procured the facility's
equipment, installed that equipment, and developed various manuals for that
equipment. Additionally, the Occupation Code defines the provision of engineering
services to include "engineering for preparation of an operating or maintenance
manual"; "a service, . . . analysis, or other work performed . . . in connection with a
utility, structure, building, machine, equipment, process, system, work, project, or
industrial . . . product or equipment of a mechanical . . . [or] . . . hydraulic. . . nature";
and "any other professional service necessary for the . . . progress, or completion of
an engineering service"--all of which describe many of the first amended petition's
contractor allegations against UOP on which the failure-to-warn claim was based. 
Tex. Occ. Code Ann. § 1001.003(c)(8), (10), (12). 

 For these reasons, we hold that the failure-to-warn claim, whether alleged
against UOP in its capacity as a designer or general contractor, was a claim for
damages arising out of the provision of professional services by a licensed or
registered professional engineer within the meaning of former section 150.002(a). 

 b. whether the failure-to-warn claim was, in essence, one for
negligence

 Our above holding is only the first part of the inquiry. We must also determine
whether this same claim was one "for negligent acts, errors, or omissions arising out
of the provision of professional services." See Williams, 2010 WL 670584, at *4. 
Only if it can be characterized as such a claim was a certificate of merit required. See
id.

 The parties do not contest the trial court's ruling that Oklahoma's substantive
law applied. The Oklahoma Supreme Court has adopted the rule of section 388 of the
Second Restatement of Torts that sets out a supplier's duty to warn of known dangers
in the ordinary use of its products. See Grover v. Superior Welding, Inc., 893 P.2d
500, 503 (Okla. 1995); Duane v. Okla. Gas & Elec. Co., 833 P.2d 284, 286 (Okla.
1992). That rule provides:

 One who supplies directly or through a third person a chattel for another
to use is subject to liability to those whom the supplier should expect to
use the chattel with the consent of the other or to be endangered by its
probable use, for physical harm caused by the use of the chattel in the
manner for which and by a person for whose use it is supplied, of the
supplier


 (a) Knows or has reason to know that the chattel is or is likely
to be dangerous for the use for which it is supplied, and


 (b) has no reason to believe that those for whose use the
chattel is supplied will realize its dangerous condition, and 


 (c) fails to exercise reasonable care to inform them of its
dangerous condition or of the facts which make it likely to
be dangerous.

Restatement (Second) of Torts § 388 (1965). The Oklahoma Supreme Court has
applied this rule of supplier-liability in a negligence case. See Grover, 893 P.2d at
502-04.


 Likewise, as pleaded, the failure-to-warn claim alleged against UOP in either
capacity sounded in negligence. For example, regarding UOP's capacity as designer,
the Kozak Plaintiffs alleged that UOP "was negligent in its performance of its duty,"
should have "exercised due care," and "breached [its] duty by . . . failing to require
warnings." Although their failure-to-warn allegations concerning UOP's capacity as
general contractor were not as explicit in this regard, the Kozak Plaintiffs alleged that
because UOP was "responsible for the actual procurement of the same equipment"
and for "assuring that the installation, operation and maintenance manuals . . .
provided safe and effective techniques to avoid" asbestos's hazards, UOP "should
have required the placement of warnings" on all relevant equipment and products. 
This is an allegation that UOP failed to exercise reasonable care to inform the
facility's workers of the dangers of asbestos when it was doing these things. As
pleaded, this claim sounded in negligence. See id. at 501-03 (providing that
negligence claim requires duty, violation of duty, and resulting injury and adopting
standard of Restatement section 388 with respect to supplier of product to determine
element of duty).

 We hold that the failure-to-warn claim, whether alleged against UOP in its
capacity as a designer or general contractor, was one "for negligent acts, errors, or
omissions arising out of the provision of professional services." See Williams, 2010
WL 670584, at *4. 

 3. Holding

 Because we conclude that the failure-to-warn claim alleged against UOP was
both a claim for damages arising out of the provision of professional services by a
licensed or registered professional and one for negligent acts, errors, or omissions
arising out of the provision of those services, we hold that the trial court abused its
discretion in denying UOP's motion to dismiss the Kozak Plaintiffs' failure-to-warn
claim alleged against UOP, whether that denial applied to the claim alleged against
UOP in its capacity solely as general contractor or also in its capacity as designer.

 We sustain UOP's sole issue in its appeal. 

CONCLUSION

 We reverse the trial court's September 26, 2008 order to the extent that it
denied UOP's motion to dismiss the failure-to-warn claim against UOP. We affirm
the trial court's September 26, 2008 order in all other respects. We remand the case
with instructions for the trial court to dismiss the referenced claim.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Bland and Massengale.
1. An appeal of an order denying a motion to dismiss under section 150.002 is an
interlocutory, accelerated appeal. Tex. Civ. Prac. & Rem. Code Ann. § 150.002(f)
(Vernon Supp. 2009); Tex. R. App. P. 28.1(a). The first notice of appeal (here,
UOP's) was thus due 20 days after the dismissal order's signing on September 26,
2008. Tex. R. App. P. 26.1(b), 28.1(a). Twenty days after that date was October 16,
2008, but UOP did not file its notice until 11 days later. However, the notice was
filed within 15 days of its due date, so that a motion for extension of time is
necessarily implied. See Verburgt v. Dorner, 959 S.W.2d 615, 617 (Tex. 1997)
(regular appeal); In re M.A., 222 S.W.3d 670, 670 (Tex. App.--Houston [14th Dist.]
2007, no pet.) (accelerated appeal); see also Tex. R. App. P. 26.3; Tex. R. App. P.
28.1(a). We further deem UOP to have given the required explanation for the late
filing: its appellant's brief reflects that the somewhat confusing procedural history of
this case led it to mistakenly believe that the trial court had dismissed, but then
"revived" by its later summary-judgment ruling, the failure-to-warn claim alleged
against it in at least one of its capacities.
2. The Kozak Plaintiffs' notice of appeal was due 14 days after UOP's notice of appeal
was filed--November 10, 2008. See Tex. R. App. P. 26.1(d). Their notice was timely
filed under the "mailbox rule." See Tex. R. App. P. 9.2(b)(1), (2); Ramos v.
Richardson, 228 S.W.3d 671, 673 (Tex. 2007).