**CARTER & BURGESS, INC., Appellant,**

v.

**Yasameen SARDARI, Appellee.**

No. 01–11–00667–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 14, 2011.

Andrew Derald Keetch, Carol J. Traylor, Stephen L. Tatum, Susan Flynt Smith, Cantey & Hanger LLP, Fort Worth, TX, for Appellant.

David L. Sheller, The Sheller Law Firm, Dion D. Ramos, M. Dean Solomon, David Klosterboer & Associates, Michael J. Reviere, Benckenstein Norvell & Nathan, Nathan Montgomery Rymer, Nicholas E.

Zito, Ramey, Chandler, McKinley & Zito, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

In this interlocutory appeal, the architectural firm Carter & Burgess, Inc. challenges the trial court's order denying its motion to dismiss. C & B contends that a certificate of merit was required by Civil Practice and Remedies Code section 150.002, but plaintiff Yasameen Sardari failed to file a certificate of merit in support of her claims against C & B. Sardari contends that no certificate of merit was required because her tailored allegations of negligent project management relate to the actions of an unlicensed employee and therefore did not arise out of the "provision of professional services." Because we nevertheless conclude that the action against C & B arose from its provision of professional services as an architectural firm, the trial court abused its discretion by denying the motion to dismiss. Accordingly, we reverse and remand this case with instructions for the trial court to dismiss Sardari's claims against C & B.

## Background

Sardari cut her wrist on the sharp edge of "the inside of the door" when entering Gigi's Asian Bistro and Dumpling Bar in the Houston Galleria. The cut severed an artery, and Sardari filed suit to recover damages arising from her injury. In her original petition, she alleged negligence claims against the owners of Gigi's and one of the contractors responsible for installing the door. After the contractor named C & B as a responsible third party, Sardari amended her petition to join C & B as a defendant. Sardari alleged that C & B "was the project manager overseeing the installation of the door and project in general." She further alleged:

6.1 On or about June 21, 2008 and at all times mentioned herein and prior thereto, Defendants ET Diamond Contractors, as general contractor and JC Glass as subcontractor, installed and/or performed work upon the door in issue; the door in issue constituted a hazardous condition. The door was fabricated by Craftsman. The Defendants Galleria I, II, and III are the owners of the Galleria Mall where the incident occurred and are responsible for making sure the premises are safe from known dangers such as the sharp edges of stainless steel doors. The Defendant Carter Burgess, Inc. was the project manager in charge of inspecting the door for safety purposes and the implied warranty of habitability. All of the Defendants knew or should have known that stainless steel doors sharpen from operating the door. This door allegedly did not have all parts of the door.

. . .

6.3 Plaintiff asserts that Defendants ET Diamond Contractors, as general contractor and JC Glass, as subcontractor, breached the duties it owed to Plaintiff and were negligent in its installation and/or work performed on the door in issue and/or they failed to warn of and/or remove the dangerous condition. The Defendant Carter Burgess, Inc. as project manager made the same mistakes described in this paragraph.

6.4 In the alternative, on or before the accident in question, Defendants ET Diamond Contractors, as general contractor, Carter Burgess, Inc., as project manager, and JC Glass, Inc. as subcontractor, voluntarily undertook the duty to install and/or repair the door to the premises where Plaintiff

was subsequently injured. In connection with undertaking the duty to install and/or repair properly, Defendants were negligent, which was a proximate cause of Plaintiff's injuries and damages.

6.5 At all times pertinent herein, Defendants ET Diamond Contractors, as general contractor, Carter Burgess, Inc. as project manager, and JC Glass, as subcontractor, Galleria I, II, III as the owner and management company, and Craftsman as the fabricator and any of Defendants' agents, who were acting in the scope of their employment, were guilty of negligent conduct toward the Plaintiff in one or more of the following ways:

A. Failing to properly install, inspect, maintain, and/or repair the door;

B. Failing to install and/or maintain the door in a reasonably safe condition;

C. Failing to give adequate and understandable warnings to Plaintiff of the unsafe condition of the door;

D. Failing to repair the condition of the door and or properly fabricate the door;

E. Failing to discover and repair the door within a reasonable time; and/or

F. Failing to perform the work in question in a good and workman-like fashion.

G. In breaching the contract(s) for services on the area near Plaintiff's fall.

H. Failing to ensure that the door did not contain sharp and/or jagged edges.

I. Installing the door with an unfinished edge.

6.6 Each and every, all and singular of the foregoing acts and omission, on the part of Defendants, taken separately and/or collectively, constituted negligence and a proximate cause of the injuries and damages of Plaintiff set forth below.

Sardari also alleged that all of the defendants had violated the Texas Deceptive Trade Practices Act.

C & B answered and moved to dismiss the claims against it because Sardari had not filed and served a certificate of merit supporting those claims as required by Chapter 150 of the Civil Practice and Remedies Code. In its motion, C & B alleged that it is "an architectural and engineering design firm" and that it had entered into professional service agreements with Gigi's pertaining to construction and renovation work at the restaurant. C & B alleged that all of its services were professional architecture services pursuant to the Texas Occupations Code. C & B thus argued that because all of Sardari's claims arose from the provision of professional services, she was required to file a certificate of merit to proceed with her claim against it.

C & B attached to its motion an affidavit from Stephen A. Clarke, P.E. who was the Associate Principal and Building Programs Unit Manager for C & B. Clarke signed the contract with Gigi's on behalf of C & B. In his affidavit, he swore that C & B rendered professional services that "were defined by the contracts with Ms. Gigi Huang and included field verification, schematic design, design development, construction documents, permitting, bid negotiations, and certain construction administration."

C & B also attached to its motion the contract with Gigi's, entitled "Authorization of Professional Services," which included a project description and scope of work. The scope of the project was sum-

marily described as "Provide the Interior / Patio design and build out of an upscale Asian restaurant with approximately 5825 square feet in a lease space within the Houston Galleria Mall." A breakdown of "Basic Services" to be included with the scope of services itemized "Field Verification," "Schematic Design," "Design Development," "Construction Documents," "Permit," "Bid Negotiations," and "Construction Administration." The Authorization for Professional Services referenced a separate definition of "Basic Services," which provided definitions for each of the itemized "Basic Services." "Field Verification" was defined as follows: "The Architect will review the existing construction documents and existing conditions of the lease. The Architect will make field visits to verify the accuracy of these documents and make minor adjustments as necessary." The "Construction Administration Phase" was defined as follows:

> The Architect shall make one (1) site visit each week for a four (4) month period to administer the contract for construction which includes the following:
>
> a. Monthly Payment Applications.
> b. Shop Drawing Review.
> b. Product Data and Sample Review.
> d. Construction Directives.
> e. Change Orders and Clarifications.
> f. Bimonthly Field Reports.
> g. Final Payment Applications.
> h. Certificate of Occupancy.

Nothing in the contracts between C & B and Gigi's assigns to C & B the responsibilities of performing the actual construction, to include construction, installation, or repair of the door referenced by Sardari's claims.

In her response to the motion to dismiss, Sardari argued that her case had "nothing to do with negligent design by a licensed or registered professional." Rather, she argued that her case was for the "negligent supervision and negligent repair of a stainless steel door, jam, and frame that was sharp upon installation or that sharpened as it opened and closed during the day." Sardari argued that in this respect C & B was acting as a project manager, not as a design professional, and that the C & B employee who Sardari contended was most responsible for the negligence was not a licensed architect. In support of her arguments, she noted that under C & B's contracts, project managers were paid at a different rate than licensed architects. In addition, quoting from C & B's interrogatory responses, Sardari observed that C & B had asserted that inspection of the door was beyond the scope of its contract for professional services, though C & B allegedly did admit to conducting a " 'punch list' walk-through." However, Sardari did not attach C & B's interrogatory responses to her response, and those responses are not part of the appellate record.

In reply, C & B argued that it provided a project manager as part of its professional services in designing and constructing the restaurant and that these services could not be separated from C & B's professional services. The trial court denied the motion to dismiss, and C & B appealed.

### Analysis

An order granting or denying a motion to dismiss for failure to file a certificate of merit is immediately appealable. *See* Tex. Civ. Prac. & Rem.Code Ann. § 150.002(f) (West 2011). We review a trial court's order denying a motion to dismiss for abuse of discretion. *See, e.g., TDIndustries, Inc. v. Rivera,* 339 S.W.3d 749, 752 (Tex.App.-Houston [1st Dist.] 2011, no pet.). A trial court abuses its discretion

when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). To the extent we are required to interpret a statute, that aspect of our review is performed de novo. *See, e.g., TDIndustries,* 339 S.W.3d at 752.

■ A plaintiff is required to file a certificate of merit in "any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional." TEX. CIV. PRAC. & REM.CODE ANN. § 150.002(a). In this context, a "licensed or registered professional" includes "a licensed architect, licensed professional engineer ... or any firm in which such licensed or registered professional practices...." *Id.* § 150.001(1). If a plaintiff's claim for damages implicates the special knowledge and training of an architect, it is a claim for damages arising out of the provision of professional services. *See, e.g., Curtis & Windham Architects, Inc. v. Williams,* 315 S.W.3d 102, 108 (Tex.App.-Houston [1st Dist.] 2010, no pet.).

■ The Legislature has defined the practice of architecture, *see* TEX. OCC.CODE ANN. § 1051.001(7) (West Supp.2010), and we defer to that legislation to define the scope of professional services provided by an architectural firm for purposes of determining whether a certificate of merit is required under the Civil Practice and Remedies Code. *See, e.g., Curtis & Windham Architects,* 315 S.W.3d at 108. The Occupations Code defines the "practice of architecture" as:

a service or creative work applying the art and science of developing design concepts, planning for functional relationships and intended uses, and establishing the form, appearance, aesthetics, and construction details for the construction, enlargement, or alteration of a building or environs intended for human use or occupancy, the proper application of which requires education, training, and experience in those matters. The term includes:

(A) establishing and documenting the form, aesthetics, materials, and construction technology for a building, group of buildings, or environs intended to be constructed or altered;

(B) preparing, or supervising and controlling the preparation of, the architectural plans and specifications that include all integrated building systems and construction details, unless otherwise permitted under Section 1051.606(a)(4);

(C) observing the construction, modification, or alteration of work to evaluate conformance with architectural plans and specifications described in Paragraph (B) for any building, group of buildings, or environs requiring an architect;

(D) programming for construction projects, including identification of economic, legal, and natural constraints and determination of the scope and spatial relationship of functional elements;

(E) recommending and overseeing appropriate construction project delivery systems;

(F) consulting, investigating, and analyzing the design, form, aesthetics, materials, and construction technology used for the construction, enlargement, or alteration of a building or environs and providing expert opinion and testimony as necessary;

(G) research to expand the knowledge base of the profession of architecture, including publishing or presenting findings in professional forums; and

(H) teaching, administering, and developing pedagogical theory in academic settings offering architectural education.

TEX. OCC.CODE ANN. § 1051.001(7); *see also* 22 TEX. ADMIN. CODE § 1.5(48) (2011) (Tex. Board of Architectural Examiners, Definition of Practice of Architecture). The practice of architecture therefore has been legislatively defined to include, among other things, observing the construction, modification, or alteration of work to evaluate conformance with architectural plans and specifications. *See* TEX. OCC.CODE ANN. § 1051.001(7)(C).

With this statutory background, we must determine whether Sardari's negligence claims against C & B are claims for damages arising out of the provision of professional services by a licensed or registered professional. TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a). In determining the nature of a party's claims with respect to Chapter 150, we look to the allegations in the party's pleadings. *E.g., TDIndustries*, 339 S.W.3d at 753. Sardari argues that in committing its allegedly negligent acts, C & B was not functioning as an architect, but merely performing the function of an unlicensed project manager, which is work that allegedly does not require an architectural license. As such, Sardari argues that the services rendered by C & B did not implicate the special knowledge and training of an architect, and thus her claims for damages do not arise out of the provision of professional services.

We are not bound by the labels that the plaintiff uses in formulating her pleadings. *See, e.g., Capital One v. Carter & Burgess, Inc.*, 344 S.W.3d 477, 482 (Tex. App.-Fort Worth 2011, no pet.); *UOP, L.L.C. v. Kozak*, No. 01–08–00896–CV, 2010 WL 2026037, at *6 (Tex.App.-Houston [1st Dist.] May 20, 2010, no pet.).

Instead, we will examine the substance of Sardari's pleadings to determine if her cause of action against C & B arises out of the practice of architecture. *See* TEX. OCC. CODE ANN. § 1051.001(7); 22 TEX. ADMIN. CODE § 1.5(48). Regardless of whether C & B agreed that it was part of its contractual duties to Gigi's, Sardari alleged that C & B was negligent performing its duty of inspecting the stainless steel door, jam, and frame that was installed as part of the construction project. She further alleged that C & B failed to discover the door's defect within a reasonable time and failed to ensure that "the door did not contain sharp and/or jagged edges." These allegations fit within the statutory definition of the practice of architecture in that they involve "observing the construction, modification, or alteration of work to evaluate conformance with architectural plans and specifications." TEX. OCC.CODE ANN. § 1051.001(7)(C). They implicate an architect's special knowledge because an architect may prepare-or supervise and control preparation of-specifications that include all construction details. *See id.* § 1051.001(7)(B). The allegations are made against a "licensed or registered professional" because C & B is a firm in which a licensed or registered professional practices. TEX. CIV. PRAC. & REM.CODE ANN. § 150.001(1).

Sardari alleged that C & B failed to give adequate and understandable warnings to her about unsafe condition of the door and failed to repair the door within a reasonable time. To the extent C & B owed any duty to Sardari in these respects, the allegations arise from C & B's alleged role as an architectural firm responsible for observing that the construction was done in accordance with the architectural specifications. *See* TEX. OCC.CODE ANN. § 1051.001(7)(C). Accordingly, these

allegations also implicate the practice of architecture. *See id.*

■ Sardari also alleged that C & B was negligent for failing to perform the work in question in a good and workman-like fashion and for breaching the contract for services. These allegations arise directly from duties allegedly created by the contract between C & B and Gigi's, which provided that the scope of services to be performed by C & B would include, among other things, field verification, schematic design, design development, preparation of construction documents, and administration of the construction phase. The contract referred to C & B as "the architect." For example, the contract stated, "The Architect will review the existing construction documents and existing conditions of the lease. The Architect will make field visits to verify the accuracy of these documents and make minor adjustments as necessary." The contract specifically included work that constituted the practice of architecture. As such, the allegations that C & B failed to provide services consistent with its contractual obligations also implicate an architect's special knowledge.

■ Sardari's briefing provides no arguments that her allegations do not implicate the practice of architecture as defined by the Occupations Code. Her only response to the statutory definition of the practice of architecture is that C & B should be held to alleged admissions in discovery that inspection of the door was not part of the professional services that it contractually agreed to perform. As noted previously, those discovery responses are not part of the appellate record before us. *See* Tex.R. Civ. P. 191.4(c) (permitting filing of discovery materials in opposition to a motion or as necessary to facilitate a proceeding in an appellate court). Regardless, even assuming that Sardari's representation about the substance of C & B's inter-rogatory response is correct, C & B's contention that it had no contractual duty to inspect the door does not imply an admission that its employees were not engaged in the provision of professional services when present on the construction site.

■ In her attempt to avoid the requirement of a certificate of merit, Sardari argues that the alleged negligence underlying her claim arose from the actions or omissions of C & B's "project manager" who was not a licensed professional. But the use of an unlicensed employee in the course of providing professional services does not eliminate the certificate of merit requirement applicable when the plaintiff seeks to impose liability on a professional architecture or engineering firm. *See, e.g., Capital One,* 344 S.W.3d at 481 (certificate of merit requirement cannot be circumvented by alleging that a licensed professional is liable for the negligence committed by an unlicensed intern in the course and scope of employment with the licensed professional). An action for damages against a firm in which a "licensed or registered professional" practices must be supported by a certificate of merit if the action arises out of the firm's provision of professional services. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 150.001(1), 150.002(a). So long as the action arises out of the provision of professional services, the statute permits no exception for an action alleging a firm's vicarious liability for the negligence of an unlicensed employee.

Sardari also suggests it would be an absurd result for her to be required to file a certificate of merit, prepared by a third-party licensed architect, to explain her theory of recovery based on the actions of a nonprofessional assigned the tasks of a project manager. We disagree. The Legislature and the Board of Architectural Examiners have each determined that the practice of architecture includes "observ-

ing the construction, modification, or alteration of work to evaluate conformance with architectural plans and specifications ... for any building, group of buildings, or environs requiring an architect." TEX. OCC. CODE ANN. § 1051.001(7)(C); 22 TEX. ADMIN. CODE § 1.5(48)(A)(iii). Accordingly, it is not implausible to suggest that the statute requiring a certificate of merit, TEX. CIV. PRAC. & REM.CODE ANN. § 150.002, requires a claimant to engage a licensed architect or architectural firm to provide an affidavit setting forth the claimant's theory of negligence, including a theory of vicarious liability for the actions of a non-professional employee acting in the course and scope of employment asserted against a defendant architectural firm providing those professional services.

We hold that Sardari alleged claims for damages arising out of the provision of professional services by an architectural firm. *Cf. Curtis & Windham Architects,* 315 S.W.3d at 108. She was required to file a certificate of merit pertaining to these claims against C & B, and because she did not, her claims should have been dismissed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 150.002(a), (e). We hold that the trial court abused its discretion in denying C & B's motion to dismiss for failure to file a certificate of merit, and we sustain C & B's sole issue.

### Conclusion

We reverse the judgment of the trial court, and we remand this case with instructions for the trial court to dismiss Sardari's claims against C & B.