**Affirmed in Part, Reversed in Part, and Memorandum Opinion filed May 11, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00300-CV

---

### KUDELA & WEINHEIMER, L.P.; SMALLWOOD, REYNOLDS, STEWART, STEWART & ASSOCIATES, INC.; AND ROBINSON & COMPANY LANDSCAPE ARCHITECTURE, INC., Appellants

### V.

### JUAN DE DIOS ARRIAGA, SUNI ARRIAGA, JUAN ARRIAGA, AND HERICK ARRIAGA, Appellees

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2021-05887**

---

## M E M O R A N D U M   O P I N I O N

This interlocutory appeal concerns the procedures required in a lawsuit for damages arising out of the provision of professional services by a licensed or registered architect or landscape architect. Appellees, Juan de Dios Arriaga, Suni Arriaga, Juan Arriaga, and Herick Arriaga (the "Arriagas"), sued appellants,

Kudela & Weinheimer, L.P. ("Kudela," landscape architects); Smallwood, Reynolds, Stewart, Stewart, & Associates, Inc. ("Smallwood," architects); and Robinson Company Landscape Architecture, Inc. ("Robinson," landscape architects); among other defendants, for personal injury damages. Section 150.002(a) of the Texas Civil Practice and Remedies Code requires in such lawsuits that the plaintiffs file with their petition a certificate of merit affidavit from a third-party who holds the same professional license or registration as the defendant.

Each of the appellants filed a motion to dismiss asserting the Arriagas failed to timely file a proper certificate of merit in this case and did not qualify for an extension of the filing deadline contained in section 150.002(c). Appellants contended that the affidavit the Arriagas filed was generally deficient, and Kudela and Robinson also argued that the affidavit was insufficient as to them because they are landscape architects and the third party who prepared the affidavit is an architect. The trial court denied each of the motions, and this interlocutory appeal ensued. Holding that the Arriagas qualified for an extension and therefore the certificate of merit was filed timely and that the certificate of merit affidavit was sufficient as to Smallwood but not as to Kudela and Robinson, we affirm in part and reverse in part.

### *Governing Law*

We review a trial court's ruling on a section 150.002 motion to dismiss under an abuse of discretion standard. *LJA Eng'g Inc. v. Santos*, 652 S.W.3d 916, 919 (Tex. App.—Houston [14th Dist.] 2022, no pet.). To the extent our analysis in this case requires us to interpret a governing statute, such review is de novo. *See id*.

As mentioned, section 150.002 mandates the filing of certificates of merit in certain types of cases against certain design professionals. It provides in relevant

2

part as follows:

## § 150.002. Certificate of Merit

(a) In any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional, a claimant shall be required to file with the complaint an affidavit of a third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor who:

>(1) is competent to testify;

>(2) holds the same professional license or registration as the defendant; and

>(3) practices in the area of practice of the defendant and offers testimony based on the person's:

>>(A) knowledge;

>>(B) skill;

>>(C) experience;

>>(D) education;

>>(E) training; and

>>(F) practice.

(b) The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim. The third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor shall be licensed or registered in this state and actively engaged in the practice of architecture, engineering, or surveying.

(c) The contemporaneous filing requirement of Subsection (a) shall

not apply to any case in which the period of limitation will expire within 10 days of the date of filing and, because of such time constraints, a claimant has alleged that an affidavit of a third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor could not be prepared. In such cases, the claimant shall have 30 days after the filing of the complaint to supplement the pleadings with the affidavit. The trial court may, on motion, after hearing and for good cause, extend such time as it shall determine justice requires. . . .

(e) A claimant's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice.

Tex. Civ. Prac. & Rem. § 150.002.

### *Procedural History*

The Arriagas allege that Juan De Dios Arriaga was working as a valet at the SkyHouse River Oaks high rise apartments on March 3, 2019, when he attempted to retrieve a set of keys from a storm drain in the center of a driveway connecting the apartment garage to the roadway and a pickup truck ran over him causing serious injuries. On January 29, 2021, the Arriagas sued SkyHouse, the driver of the truck, and several design professionals allegedly involved in the design and construction of the driveway. In their original petition, the Arriagas did not name any of the appellants in this appeal as defendants, but the Arriagas did attach a certificate of merit by licensed professional engineer Moises Cruz, who alleged that faulty design of the driveway was a cause of the accident and Juan De Dios's injuries.

On February 26, 2021, the Arriagas requested that the trial court shorten the time allotted for the original defendants to answer Rule 194 Requests for Disclosures, which was granted on March 4. On March 10, 2021, the day before the applicable two-year statute of limitations was to expire, the Arriagas filed their

4

Third Amended Petition adding appellants as defendants. *See generally* Tex. Civ. Prac. & Rem. Code § 16.003(a) (providing two-year statute of limitations for torts resulting in personal injuries). In their Third Amended Petition, the Arriagas did not allege that, because of time constraints, certificates of merit by a licensed architect and a registered landscape architect could not be prepared, and they did not request any extension in order to file such certificates. Instead, the Arriagas attached a new affidavit by Cruz, which added allegations against the new defendants, even though Cruz is an engineer and not an architect or landscape architect.

On April 5, 2021, Smallwood filed a motion to dismiss based on the lack of a proper certificate of merit. On April 7, the Arriagas then filed their Fourth Amended Petition attaching a certificate of merit by architect Paul Davis, making similar allegations to those previously raised by Cruz and, indeed, at times just adopting Cruz's allegations. At that time, the Arriagas also filed a separate document asserting that they had been unable to provide a certificate of merit by a licensed architect earlier due to the quickly running limitations period. Later that same day, the Arriagas filed their Fifth Amended Petition and an amended notice of late-filed certificate of merit containing substantially similar allegations. Kudela and Robinson subsequently filed motions to dismiss, and the trial court denied all three motions to dismiss. We will begin our analysis by discussing the timeliness of the certificate of merit before turning to whether it was sufficient in regards to the landscape architects Kudela and Robinson, and whether it was generally sufficient under section 150.002.

### Timeliness of Certificate

Appellants first argue that the trial court erred in denying their motions to dismiss because the Arriagas (1) failed to file a certificate of merit by a licensed

architect or registered landscape architect before the running of the statute of limitations and (2) failed to assert prior to the running of the statute that, because of time constraints, a certificate of merit by a licensed architect or registered landscape architect could not be prepared. The Arriagas concede that they did not file a proper certificate of merit before the running of limitations. They assert, however, that they qualified for the automatic 30-day extension for filing a certificate of merit—set forth in section 150.002(c)—because they filed their Third Amended Petition within ten days of the running of limitations and filed a separate document within the 30-day extension period asserting that they had been unable to provide a certificate of merit by a licensed architect earlier due to the quickly approaching limitations deadline. Appellants, on the other hand, assert that the Arriagas needed to have filed their lack-of-time allegation prior to the running of the statute in order to be entitled to the 30-day extension. Based on governing precedent, we agree with the Arriagas.

As an intermediate appellate court in Texas, we are bound to follow precedent set by the Texas Supreme Court as well as our own prior precedent. *See, e.g.*, *Apache Corp. v. Castex Offshore, Inc.*, 626 S.W.3d 371, 384 (Tex. App.—Houston [14th Dist.] 2021, pet. denied); *Abdullatif v. Choudhri*, 561 S.W.3d 590, 623 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *Hebert v. Hopkins*, 395 S.W.3d 884, 902 n.16 (Tex. App.—Austin 2013, no pet.). In *Epco Holdings, Inc. v. Chi. Bridge & Iron Co.*, a majority of a panel of this court concluded that section 150.002 did not require a plaintiff's allegation under subsection (c) to be made in the first petition naming a particular design professional as a party but instead was satisfied so long as the subsection (c) allegation was made within the thirty-day extension period. 352 S.W.3d 265, 269 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd) (citing *Nangia v. Taylor*, 338 S.W.3d 768, 772 (Tex. App.—

Beaumont 2011, no pet.)). Here, as in *Epco*, the Arriagas made their subsection (c) lack-of-time allegation within the 30-day extension period after having filed their lawsuit against appellants shortly before the running of limitations. Barring contrary direction from the Texas Supreme Court, we are bound to follow our precedent in *Epco*. *See Mitschke v. Borromeo LLC*, 645 S.W.3d 251, 256–57 (Tex. 2022).Subsequent to our decision in *Epco*, the Texas Supreme Court in *Crosstex Energy Services, L.P. v. Pro Plus, Inc.*, described the first sentence of subsection (c) as providing "an exception to the contemporaneous filing requirement, made available when a plaintiff both files within ten days of the end of the limitations period *and* alleges that the late filing prevented the preparation of a certificate of merit." 430 S.W.3d 384, 390 (Tex. 2014) (emphasis in original). The issue in *Crosstex* concerned whether a plaintiff who filed suit outside the final ten days of the limitations period might receive a "good cause" extension as set forth in the final sentence of subsection (c). In holding that "[a] plaintiff who files suit outside the ten-day window, as Crosstex did, cannot claim protection of the good cause exception," the court further explained that

> [T]he "good cause" exception in subsection (c) does not stand alone, but rather is contingent upon a plaintiff: (1) filing within ten days of the expiration of the limitations period; and (2) alleging that such time constraints prevented the preparation of an affidavit. A plaintiff satisfying these requirements "shall" receive an extension of thirty days; upon motion, a trial court may, for good cause, extend this thirty day period as justice requires. A plaintiff who files suit outside the ten-day window, as Crosstex did, cannot claim protection of the good cause exception.

*Id*. at 391.

A few of our sister courts have interpreted this language from *Crosstex* as indicating that a subsection (c), lack-of-time allegation filed after the running of limitations, as occurred here and in *Epco*, would not entitle the plaintiff to the 30-

day extension under that section even though the plaintiff's lawsuit had been filed within ten days before expiration of limitations. *See, e.g.*, *Barron, Stark & Swift Consulting Eng'rs, LP v. First Baptist Church, Vidor*, 551 S.W.3d 320, 323 (Tex. App.—Beaumont 2018, no pet.) (disregarding *Epco* and *Nangia* in light of *Crosstex*); *Emerald Waco Invs., Ltd. v. Petree*, No. 05-15-00863-CV, 2016 WL 4010056, at *4 (Tex. App.—Dallas July 25, 2016, no pet.) (mem. op.) (same). For several reasons, we decline to join these court's conclusion regarding the precedential value of *Crosstex*.

To begin with, the issue in *Crosstex* was not whether the lack-of-time allegation had to be made prior to the running of limitations or whether it could be made within the 30-day extension period so long as the lawsuit was filed within the ten-day period before the running of limitations. As stated, the issue in *Crosstex* was whether a plaintiff who files suit outside the ten-day window can claim protection of the good cause exception. 430 S.W.3d at 391. Moreover, the *Crosstex* court made no overt reference to or ruling regarding whether a plaintiff who files suit within the ten-day period before limitations runs has to also make their lack-of-time allegation before limitations runs in order to be entitled to the 30-day extension. The court essentially just restated the requirements of subsection (c) for the 30-day extension, i.e., that the lawsuit be filed within ten days of limitations running and the plaintiff must make a lack-of-time allegation. *See id*. The court did not explicitly state that the allegation need be made before limitations expires. The *Crosstex* court certainly did not expressly overrule *Epco* or *Nangia*; indeed, neither case is even cited in *Crosstex*. For these reasons, we conclude *Crosstex* did not overrule our prior opinion in *Epco*. Accordingly, we are bound to continue to follow our precedent and hold that the Arriagas' lack-of-time allegation was not untimely. *See Chase Home*, 309 S.W.3d at 630. We therefore overrule appellant's

issues to the extent that they contain this argument.[1]

### *Landscape Architects*

Next, we turn to Kudela and Robinson's argument that the trial court erred in denying their motions to dismiss because the Arriagas never filed a certificate of merit affidavit by a registered landscape architect. The Arriagas do not deny that Kudela and Robinson are landscape architecture firms that provided landscape architecture services to the SkyHouse River Oaks building project or that they were required to present a certificate of merit affidavit regarding these defendants. *See generally Carter & Burgess, Inc. v. Sardari*, 355 S.W.3d 804, 809 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("An action for damages against a firm in which a 'licensed or registered professional' practices must be supported by a certificate of merit if the action arises out of the firm's provision of professional services.") (citing Tex. Civ. Prac. & Rem. §§ 150.001(1-c), 150.002(a)). The Arriagas instead urge us—as they did the trial court—to "ignore landscape architecture as a subspecialty" of architecture or design professionals and instead focus on the fact that the affidavits they did provide spoke broadly regarding deficient conduct by "design professionals." We agree with Kudela and Robinson that the Arriagas were required to file an affidavit by a registered landscape architect and failed to do so.

As set forth above, section 150.002 requires that in lawsuits such as this against certain design professionals, the plaintiffs must file an affidavit by an affiant who "holds the same professional license or registration as the defendant." Tex. Civ. Prac. & Rem. § 150.002(a)(2). The two affidavits the Arriagas filed in

---

[1] We further note that the circumstances in the present case are readily distinguishable from those we encountered in *Texas Southern University v. Kirksey Architects, Inc.*, where the plaintiff failed to ever make a subsection (c) lack-of-time allegation and thus was not entitled to a 30-day extension. 577 S.W.3d 570, 577 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

9

this case were by a licensed professional engineer (Cruz) and a licensed architect (Davis). The Arriagas did not file an affidavit by a registered landscape architect as was required by the statute to support their claims against Kudela and Robinson. The statute is unambiguous on this point and clearly requires an affidavit by an affiant who "holds the same professional license or registration as the defendant." *See Kayne Anderson Cap. Advisors, L.P. v. Hill & Frank, Inc.*, 570 S.W.3d 884, 886–87 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (explaining that the section 150.002 requirements that an affiant be competent to testify and be "knowledgeable in the area of practice of the defendant" are separate from, in addition to, and cannot take the place of the requirement the affiant hold "the same professional license or registration as the defendant"); *Jennings, Hackler & Partners, Inc. v. N. Tex. Mun. Water Dist.*, 471 S.W.3d 577, 583 (Tex. App.—Dallas 2015, pet. denied) ("Th[e] statute unambiguously provides that a certificate of merit must be authored by someone holding the same professional license or registration as the defendant.").

Because the Arriagas failed to provide a certificate of merit affidavit by a registered landscape architect, the trial court erred in denying Kudela and Robinson's motions to dismiss. We therefore sustain Kudela and Robinson's issues.[2]

---

[2] The Arriagas attempt to analogize the section 150.002 requirements to those contained in Civil Practice and Remedies Code Chapter 74 regarding expert reports in medical malpractice cases, apparently analogizing "design professionals" as a whole to physicians as a whole, and arguing that the affidavits by Cruz and Davis were sufficient because the claims in this case fall within the basic understandings of design professionals as a group. As Kudela points out, however, unlike section 150.002, which clearly requires an affidavit from someone holding the same professional license or registration as the defendant, Chapter 74 "focuses not on the defendant doctor's area of expertise, but on the condition involved in the claim." *Rittger v. Danos*, 332 S.W.3d 550, 558 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Blan v. Ali*, 7 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 1999, no pet.)). Accordingly, reference to chapter 74 is not applicable to the clear language in section 150.002.

### *Adequacy of Affidavit*

Lastly, we turn to Smallwood's arguments regarding the general adequacy of Davis's qualifications and opinions as set out in his certificate of merit affidavit and attached documents. As relevant to Smallwood's arguments and as set out above, section 150.002(b) requires that (1) the affiant "practices in the area of practice of the defendant" and (2) the affidavit specifically set forth for each theory of recovery "the negligence, if any, or other action, error, or omission . . . claimed to exist and the factual basis for each such claim." Tex. Civ. Prac. & Rem. § 150.002(a)(3), (b).

Smallwood first contends that it is apparent from Davis's affidavit and curriculum vitae that while he may be a licensed architect in Texas, he is not actively engaged in the practice of architecture. Smallwood correctly notes that the only explicit comments Davis makes in his affidavit about his career or practice is where he states, "during my architectural career I have worked on multiple projects across the country with civil engineers. Those projects included the design of high-volume parking garages, driveways, roadways, and entry/exit intersections." Smallwood then asserts that Davis's CV indicates he has not practiced as an architect since 2007 when he was an architect on a project at the Valero Aruba Refinery. Smallwood apparently chose this entry on Davis's CV as the last time he practiced as an architect because it is the most recent entry that Davis labeled as "architect" (technically, "Sr. Project Manager, Master Planner and Architect"). As Smallwood emphasizes, Davis listed his more recent positions on projects variously as "Sr. Project/Program Manager," "Area Program Manager," "Sr. Program/Construction Manager," and "Sr. Project/Construction Manager." Smallwood concludes that "[t]here is no indication that he has been the architect of record on a construction project, . . . responsible for signing and sealing a set of

drawings to construct a building, . . . responsible for signing and sealing a set of drawings related to a driveway, or any other practice of architecture." Smallwood does not offer a citation for its apparent restrictive definition of the practice of architecture and does not discuss the detailed descriptions Davis provided on his CV for each listed project and position.

For purposes of section 150.002, the "practice of architecture" has the meaning assigned to it by section 1051.001 of the Occupations Code. Tex. Civ. Prac. & Rem. § 150.001(2); Tex. Occ. Code § 1051.001(7). Section 1051.001 defines the practice of architecture broadly to include

> a service or creative work applying the art and science of developing design concepts, planning for functional relationships and intended uses, and establishing the form, appearance, aesthetics, and construction details for the construction, enlargement, or alteration of a building or environs intended for human use or occupancy, the proper application of which requires education, training, and experience in those matters. The term includes:
>
> (A) establishing and documenting the form, aesthetics, materials, and construction technology for a building, group of buildings, or environs intended to be constructed or altered;
>
> (B) preparing, or supervising and controlling the preparation of, the architectural plans and specifications that include all integrated building systems and construction details, unless otherwise permitted under Section 1051.606(a)(4);
>
> (C) observing the construction, modification, or alteration of work to evaluate conformance with architectural plans and specifications described in Paragraph (B) for any building, group of buildings, or environs requiring an architect;
>
> (D) programming for construction projects, including identification of economic, legal, and natural constraints and determination of the scope and spatial relationship of functional elements;

12

(E) recommending and overseeing appropriate construction project delivery systems;

(F) consulting, investigating, and analyzing the design, form, aesthetics, materials, and construction technology used for the construction, enlargement, or alteration of a building or environs and providing expert opinion and testimony as necessary;

(G) research to expand the knowledge base of the profession of architecture, including publishing or presenting findings in professional forums; and

(H) teaching, administering, and developing pedagogical theory in academic settings offering architectural education.

Tex. Occ. Code § 1051.001(7). To paraphrase our sister court, "the umbrella of practicing architecture casts a wide shadow." *Whitaker v. R2M Eng'g, LLC*, 603 S.W.3d 530, 538 (Tex. App.—Amarillo 2020, pet. denied) (discussing the "practice of engineering" under section 150.002).

In discussing the various building and renovation projects on which he served as a project, program, or construction manager, Davis states in his CV that, among other duties, he provided "project planning, management, design and construction expertise"; "manag[ed] construction project renovations and upgrades"; and "managed all professional design and construction contracts, architects, engineers, consultants, and contractors and in-house staff of project and construction staff," and his duties "included planning, design review, coordination, procurement and construction management." These supervisory or project management duties fall within the statutory definition of the practice of architecture. *See* Tex. Occ. Code § 1051.001(7); *Thompson Hancock Witte & Assocs. v. Brazos Presbyterian Homes, Inc.*, No. 14-20-00827-CV, 2022 WL 1010256, at *1 n.2, 3–4 (Tex. App.—Houston [14th Dist.] Apr. 5, 2022, no pet.) (mem. op.) (holding affiant was actively engaged in the practice of architecture

where he stated he had worked as "an architect, design-build construction company manager, developer, and project manager in the profession since 1968"); *Studio E Architecture & Interiors, Inc. v. Lehmberg*, No. 04-19-00026-CV, 2019 WL 3229194, at *3–4 (Tex. App.—San Antonio Apr. 17, 2019, pet. denied) (mem. op.) (holding project manager functions fell within ambit of section 1051.001(7)); *Carter & Burgess*, 355 S.W.3d at 809 (same).

Smallwood further challenges the sufficiency of Davis's allegations in his affidavit, arguing he fails to state with specificity what negligence, act, error, or omission Smallwood purportedly did that caused the Arriagas' damages or to provide any factual basis to support his vague and conclusory statements. *See* Tex. Civ. Prac. & Rem. §§ 150.002(b). Smallwood also criticizes Davis's adoption of Cruz's statements and conclusions in his affidavit without, Smallwood insists, explaining how those statements and conclusions apply to architects rather than engineers. According to Smallwood, "Davis' [sic] affidavit is effectively a recitation of Cruz' [sic] affidavit without providing any unique analysis into the basis of the claims against an architect or landscape architect."

We do not read Davis's affidavit as being as limited as Smallwood suggests. Although Davis did attach a copy of Cruz's affidavit to his own affidavit and did adopt many of Cruz's statements and conclusions, Davis explained that he did so because "[w]hile Mr. Cruz is an engineer, his opinions fully apply to these Defendant Architects and I adopt all of those opinions specific to 'Design Professionals'—they apply equally to the Defendant Architects." Davis further asserted that "[d]esign of large structures like this high-rise residential building require architects and engineers to work together to solve these exact issues of public and pedestrian safety. And the criticisms outlined in the Cruz Certificate of Merit apply equally to the Defendant Architects." But Davis did not simply adopt

14

Cruz's assertions, Davis also explained that "[w]hen designing those areas, in which pedestrians and vehicles will necessarily intersect, [i.e., 'high-volume parking garages, driveways, roadways, and entry/exit intersections,'] design professionals like architects and architectural firms have a duty to prioritize the safety of pedestrians[, which] necessarily means including the kinds of basic safety features outlined in Mr. Cruz's certificate of merit." More specifically, Davis emphasized and quoted Cruz's statement that the "design lacked markings, lighting and signage that controlled traffic speed, traffic flow, alerted driver and pedestrians of hazards, [and] distinguished pedestrian egress and walkways." Davis indicated that a prudent architect "should have recognized the unfavorable traffic control plan" and made the required safety improvements listed in Cruz's affidavit. Davis concluded that "[b]ecause no markers, warnings, signage, speed humps or bumps, or lane dividers were present on the day of the accident, or at any time prior to the accident, it is clear the Defendant Architects failed their duties in design" and "because these failures concern pedestrian safety it is foreseeable that a pedestrian like Mr. Arriaga may be injured as a result of those failures."

Turning to Cruz's affidavit as adopted and applied to architects by Davis, we can see that Cruz made detailed observations regarding the accident that led to the filing of this lawsuit and then opined that the "architects and engineers that participated in the design plan for the subject driveway [were] negligent for failing to implement a traffic control plan" that took into account traffic volume, speed, direction, and flow; driveway width; turning radius for small, medium and large vehicles; two-way traffic; line of sight and visual obstructions around corners; and lighting conditions. Cruz further asserted that

> [t]hese Design Professionals failed to use ordinary care and
> reasonable judgement in the design of the driveway by not
> implementing a design that protected the public by distinguishing

15

travel lanes in a relatively narrow driveway with entry and exits to a municipal street that served two entries to a multi-level garage with ground parking along the rear of the building that also services commercial loading and unloading within the same driveway.

Cruz highlighted that given "the unfavorable traffic and driving conditions along the driveway"—i.e., expected traffic volume around a high-rise residential building, the narrow two-way driveway connecting entry and exits from a multi-story garage with outside parking, obstructed views for drivers going around the building, and pedestrian access to the driveway—the design needed to "[c]ontrol the turning of vehicles around the building which created a blind spot," "[protect] the public walkway and pedestrian crosswalk between the main building and the garage," and "[d]istinguish and separate the traffic flow to reduce the potential for collisions." He further asserted it was "necessary to have minimal traffic control measures like barriers, signs and markings to guide visiting pedestrians, residents, visiting drivers and resident drivers using the driveway and sidewalks." Absent these "minimum traffic controls," Cruz alleged the design "failed to slow down traffic that was entering the driveway, failed to separate the traffic into lanes, failed to warn drivers of blind spots[, and] failed to warn drivers and pedestrians of hazards." Cruz concluded that the "Design Professionals['] fail[ure] to perform their services in a good and workmanlike manner . . . was a producing cause of Plaintiff's damages."

In sum, Davis's own assertions and incorporation of Cruz's allegations in his affidavit were sufficient to meet the requirements of section 150.002(b). Accordingly, the trial court did not err in denying Smallwood's motion to dismiss and we overrule Smallwood's sole appellate issue.

### Conclusion

Because we hold that the Arriagas timely provided an adequate certificate of

16

merit affidavit as to Smallwood but failed to do so in regard to Kudela and Robinson, we affirm the trial court's denial of Smallwood's motion to dismiss, reverse the trial court's denial of Kudela and Robinson's motions to dismiss, and instruct the trial court to dismiss the Arriagas' claims against Kudela and Robinson.


/s/     Frances Bourliot
        Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Spain.

17