**Opinion issued December 31, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-22-00946-CV**

———————————

**IN RE CHANNELVIEW FLOODING LITIGATION**

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2022-37626**

---

**MEMORANDUM OPINION**

One hundred twenty-five property owners filed lawsuits alleging that the construction of two crude oil pipelines in a utility corridor caused their properties to flood. The defendants—utility companies, the pipeline owners, and the pipeline construction contractor—moved to dismiss under Section 150.002 of the Civil Practice and Remedies Code, which requires a "certificate of merit" in "any action"

for "damages arising out of the provision of professional services by a licensed or registered professional," including engineers.[1] The multidistrict litigation ("MDL") court presiding over pretrial matters denied the motion to dismiss.

On appeal,[2] the defendants contend:

(1)    Section 150.002 required the owners to file a certificate of merit because their claims arise out of the provision of professional engineering services; and

(2)    The owners' certificates of merit do not comply with the statute because they contain only collective assertions of actions, errors, and omissions that do not differentiate between defendants.

Because we conclude that Chapter 150 applies and that the certificates of merit are defective as to some but not all defendants, we reverse in part, affirm in part, and remand.

**Background**

CenterPoint Energy Houston Electric, LLC ("CenterPoint Electric") granted an easement to Oiltanking Houston, L.P. ("the CenterPoint easement") for the construction of two crude oil pipelines in a utility corridor running through Channelview, Texas. Four years after the pipelines were completed, plaintiffs Mary Evans and Don Weston Dorrell ("the *Evans* parties") filed a putative class action

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE § 150.001(1–c), .002(a).

[2]    *See id.* § 150.002(f).

2

("the *Evans* lawsuit"), claiming that the pipeline construction had caused properties near the CenterPoint easement to flood.

The original petition in the *Evans* lawsuit named as defendants CenterPoint Energy; Oiltanking Partners, LP ("Oiltanking"); and Enterprise Products Partners, LP ("Enterprise Partners"), the then-owner of the pipeline. The petition alleged that Oiltanking and Enterprise Partners had "excavated huge quantities of soil from the CenterPoint easement" to create a trench large enough for the pipelines. Then, after laying the pipeline, Oiltanking and Enterprise Partners returned the excavated soil to the trench and compacted it. According to the *Evans* parties, the soil covering the CenterPoint easement became "impermeable" and "brick-like" because, "by not hauling in new soil to match the original topsoil composition and structure," Oiltanking and Enterprise Partners had compacted "hardened clay" that was "naturally present in the subsurface layers in the area at issue" on the surface of the CenterPoint easement. And this, in turn, caused water to run off the CenterPoint easement onto adjacent properties.

Considering the construction "occur[red] merely feet away from hundreds of homes and residents," the *Evans* parties said, it was "reasonable to expect that [CenterPoint Energy, Oiltanking, and Enterprise Partners[3]] would return the pipeline

---

[3] The original petition the *Evans* lawsuit refers to these parties collectively as "Defendants."

3

easement to a state of structural integrity which would leave neighboring properties undisturbed." Instead, trees began to fall, "grounds remained saturated and swampy for days and weeks on end following rain events," sidewalks buckled, driveways and backyards sank, and building walls and floors cracked.

Based on these allegations and others related to information they claimed CenterPoint Energy, Oiltanking, and Enterprise Partners did not share about the construction, the *Evans* parties pleaded class claims for negligence; negligence per se; negligent hiring, supervision, and training; gross negligence; private nuisance; and fraud by nondisclosure. And they sought damages for the loss of use and enjoyment of their homes, diminution of their property value, and repair costs. They also sought exemplary damages.

Contemporaneously with their original petition, the *Evans* parties filed a certificate of merit prepared by their engineering expert, M. Doyle Sanders, under Section 150.002 of the Civil Practice and Remedies Code ("the original Sanders certificate"). *See* TEX. CIV. PRAC. & REM. CODE § 150.002(a). Sanders holds a Bachelor of Science degree in civil engineering from Texas A & M University, is a professional engineer licensed in Texas and six other states, with 50 years' experience, and claims specific knowledge "in the areas of pipeline design, development, and construction." In his first certificate of merit, Sanders said that

4

"licensed or registered professionals working for or at the direction of" Enterprise Products, Oiltanking, "and/or" CenterPoint Energy were negligent in

- failing to adequately or appropriately design the pipeline at issue to prevent the diversion of surface water . . . into the [surrounding] neighborhoods . . . ;

- failing to develop a method of construction . . . that preserve[d] the structural integrity of soil covering the pipeline, the composition of topsoil, and the natural flow of surface water over and into [the CenterPoint easement];

- failing to mitigate damage, nuisance, and/or adverse impact as the result of the diversion of surface water into the [surrounding] neighborhoods . . . ; and

- failing to warn [the *Evans* parties], Class Members, and the surrounding public of the damage and adverse impact that would result from the construction of the pipeline[.]

According to Sanders, the factual basis for these claims was "apparent" because, after the pipeline was constructed, surface water was diverted away from the CenterPoint easement onto adjacent properties.

Enterprise objected to the certificate of merit and moved to dismiss the *Evans* lawsuit. The motion asserted that the *Evans* parties' petition invoked Section 150.002 by alleging claims arising out of the provision of professional engineering services. The motion also asserted that the original Sanders certificate was deficient in that it contained only collective, non-particularized allegations of negligence that did not differentiate between defendants and provided only vague allegations that did not "set forth specifically for each theory of recovery" the alleged acts, errors,

5

and omissions, and their factual basis. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(b). CenterPoint joined the motion.

While the motion to dismiss was pending, the *Evans* parties amended their petition three times. In their first amended petition, the *Evans* parties named additional defendants, including Troy Construction, the pipeline construction contractor, and several more Enterprise and CenterPoint companies. The additional Enterprise companies were Enterprise Houston Ship Channel, L.P. ("Enterprise Ship Channel LP"), a company that purchased Oiltanking after construction of the pipelines; Enterprise Houston Ship Channel GP, LLC ("Enterprise Ship Channel GP"); Enterprise Terminaling Services GP, LLC ("Enterprise Terminaling"); and Enterprise Products Holdings, LLC ("Enterprise Holdings") (collectively, with Enterprise Partners, "the Enterprise companies"). And the additional CenterPoint company was CenterPoint Electric, the easement grantor (collectively, with CenterPoint Energy, the "CenterPoint companies").

The *Evans* parties' first amended petition included some allegations specific to Oiltanking and Enterprise Partners—that they "were involved in the direction, construction, and/or planning of the pipeline(s) at issue and directed and controlled the actions of the other Defendants"—and Troy Construction—that it was involved in excavating the soil and then returning the excavated soil back to the trench. But

6

the causes of action alleged acts, errors, or omissions against the Enterprise companies and CenterPoint companies collectively or against all defendants.

The first amended petition also included a second certificate of merit from Sanders ("the second Sanders certificate"), addressing "faults or omissions" of "licensed or registered professionals working for or at the direction of" Troy Construction, Enterprise Ship Channel LP, Enterprise Ship Channel GP, Enterprise Terminaling, Enterprise Holdings, "and/or" CenterPoint Electric.[4] The second Sanders certificate restated the same four alleged "faults or omissions" regarding pipeline design, construction planning and management, failure to mitigate impact, and failure to warn. And it added a fifth omission for failing to "plan and develop a suitable Storm Water Pollution Prevention Plan (SWPPP) including Best Management Practices for the addition of the new pipeline . . . that would be in compliance with [state, county, and city] flood control management for compatibility and protection of [the] neighboring community storm water drainage systems." The second Sanders certificate also added that the factual bases for the claims was evident from Sanders's review of "public information concerning the layout of the pipeline corridor and neighboring communities, the pipeline(s) at issue, the manner in which the pipeline[] was constructed, status of restoration of pipeline

---

[4] The second Sanders certificate did not address the original three defendants named by the *Evans* parties—CenterPoint Energy, Oiltanking, and Enterprise Partners.

7

construction with competent practices for erosion and sedimentation control, and by the apparent surface water diversion away from the [CenterPoint easement] and onto adjacent properties."

The *Evans* parties continued to rely on the second Sanders certificate in a second amended petition, and the newly added defendants filed their own motion to dismiss under Section 150.002. Before the trial court ruled on the motions to dismiss, however, the *Evans* parties dropped their class action allegations in a third amended petition. The third amended petition alleged the same claims plus an additional claim for trespass. It also referenced the second Sanders certificate but did not attach it.

At the same time, 124 members of the putative class ("the other MDL parties" or collectively, with the *Evans* parties, "the plaintiffs")—all Channelview property owners—filed individual suits against the same defendants and asserted the same claims (the "MDL petition").[5] The petitions in the new lawsuits also included a certificate of merit from Sanders ("the third Sanders certificate") as to all defendants. Because discovery had proceeded in the *Evans* lawsuit in the intervening years, Sanders had produced an expert opinion in that litigation ("the Sanders report"). The third Sanders certificate incorporated by reference certain opinions set out in the Sanders report.

---

[5] As the MDL petition, the record contains an exemplar petition from one of the other MDL parties—the first amended petition in the *Aguilera* lawsuit.

8

On the defendants' joint motion to transfer, all 125 lawsuits (the *Evans* lawsuit plus the 124 new lawsuits) were transferred to the MDL court for case management. The defendants then moved to dismiss all lawsuits under Section 150.002, reasserting the same arguments on statutory noncompliance. The MDL court denied the motions.

After the MDL court denied the motions to dismiss, the plaintiffs filed a master petition. The second amended master petition abandoned any fraud claim and omitted Oiltanking and three Enterprise companies as defendants (Enterprise Partners, Enterprise Terminaling, and Enterprise Holdings), leaving as defendants two Enterprise companies (Enterprise Ship Channel LP and Enterprise Ship Channel GP), two CenterPoint companies (CenterPoint Energy and CenterPoint Electric), and Troy Construction.[6]

## Certificate of Merit

The defendants jointly argue that the trial court reversibly erred in denying their motions to dismiss because (1) all plaintiffs' claims arise out of the provision of professional engineering services, making them subject to Section 150.002's certificate-of-merit requirement, *see* TEX. CIV. PRAC. & REM. CODE § 150.002(a), and (2) the plaintiffs' certificates of merit are deficient because they contain only

---

[6] The plaintiffs also asserted in a letter to the Court that 63 of the 125 owners have nonsuited or dismissed their claims against the defendants.

collective, non-particularized allegations of actions, errors, and omissions that do not differentiate between the defendants.

## A.    Applicable Law

When a plaintiff sues for "damages arising out of the provision of professional services by a licensed or registered professional," including licensed engineers and the firms in which they practice, Section 150.002 requires the plaintiff to file a sworn certificate of merit with the petition. TEX. CIV. PRAC. & REM. CODE § 150.002(a); *see id.* § 150.001(1–c). A certificate of merit is an affidavit from a third-party professional who is (1) competent to testify, (2) holds the same license or registration as the defendant, (3) practices in the defendant's area of practice, and (4) offers testimony based on the person's knowledge, skill, experience, education, training, and practice. *Id.* § 150.002(a)(1)–(3).

The third-party professional's affidavit must be filed with the first-filed complaint raising the claim "for damages arising out of the provision of professional services by the licensed or registered professional." *See id.* §§ 150.001(1–b), .002(a); *TRW Eng'rs, Inc. v. Hussion St. Bldgs., LLC*, 608 S.W.3d 317, 321 (Tex. App.—Houston [1st Dist.] 2020, no pet.). And it must

> set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim.

10

TEX. CIV. PRAC. & REM. CODE § 150.002(b).

At this preliminary stage, however, plaintiffs are not required to marshal their evidence or provide the full range of information a defendant is entitled to obtain through discovery. *See, e.g.*, *Dunham Eng'g, Inc. v. Sherwin-Williams Co.*, 404 S.W.3d 785, 795 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Rather, Section 150.002 "reflects a legislative goal of requiring merely that plaintiffs make a threshold showing that their claims have merit." *M-E Eng'rs, Inc. v. City of Temple*, 365 S.W.3d 497, 504 (Tex. App.—Austin 2012, pet. denied). In this sense, the statute gives certain professionals and the firms where they practice "the right to a professional certification that any complaint about their services has merit before any litigation may be undertaken at all." *LaLonde v. Gosnell*, 593 S.W.3d 212, 220 (Tex. 2019) (describing certificate-of-merit requirement as "a substantive hurdle that helps ensure frivolous claims are expeditiously discharged"); *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 390 S.W.3d 299, 301 (Tex. 2013) (noting statute provides for dismissal as a sanction "to deter meritless claims and bring them quickly to an end").

The trial court determines whether the affidavit sufficiently shows that the complaint is not frivolous. *Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 894 (Tex. 2017); *see CBM Eng'rs, Inc. v. Tellepsen Builders L.P.*,

11

403 S.W.3d 339, 345 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). If it does

not, Section 150.002 requires dismissal. *Id.* § 150.002(e).

**B.      Standard of Review**

We review a trial court's order denying a Section 150.002 motion to dismiss

for an abuse of discretion. *TRW Eng'rs*, 608 S.W.3d at 319. A trial court abuses its

discretion when it acts arbitrarily or unreasonably, without reference to any guiding

rules or principles, and when it fails to analyze or apply the law correctly. *Pedernal*

*Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 492 (Tex. 2017).

If an appellate issue requires interpretation of a statute, that aspect of our

review is de novo. *See id.* at 491. Our goal in construing a statute is to determine and

give effect to the Legislature's intent. *Id.* "We look to and rely on the plain meaning

of a statute's words as expressing legislative intent unless a different meaning is

supplied, is apparent from the context, or the plain meaning of the words leads to

absurd or nonsensical results." *Id.*; *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*,

430 S.W.3d 384, 389–90 (Tex. 2014). "We also take statutes as we find them and

refrain from rewriting text chosen by the Legislature." *Pedernal Energy*, 536 S.W.3d

at 492.

**C.      Section 150.002 applies because the claims arise out of the provision of professional engineering services**

In determining whether Section 150.002 applies here, we ask whether the

action is one for "damages arising out of the provision of professional services by a

12

licensed or registered professional" engineer. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(a). And we affirmatively answer the question.

### 1. Licensed or registered professionals

The defendants provided evidence with their motions to dismiss that they each employ licensed professional engineers. The plaintiffs argue that this evidence does not show the defendants' status as "licensed or registered professional[s]" because the statute's application is limited to claims asserted against licensed or registered individuals and the *architecture and engineering firms* that employ those specific individuals. But the statutory definition of a "licensed or registered professional" does not limit its application to only licensed or registered individuals or professional architecture or engineering firms. *See id.* § 150.001(1–c).

The statute applies "in any action . . . for damages arising out of the provision of professional services by a licensed or registered professional." *See id.* § 150.002(a). And it broadly defines a "licensed or registered professional" to include a licensed professional engineer and "*any firm* in which such licensed or registered professional practices, including but not limited to a corporation, professional corporation, limited liability corporation, partnership, limited liability partnership, sole proprietorship, joint venture, or any other business entity." *Id.* § 150.001(1–c) (emphasis added). The plain meaning of the word "firm" does not support limiting the statute's application to only professional architecture or

engineering firms. *See* Firm, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. The title under which one or more persons conduct business jointly. 2. The association by which persons are united for business purposes."); *cf. Siemens Energy, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 14-13-00863-CV, 2014 WL 2531577, at *1 (Tex. App.—Houston [14th Dist.] June 3, 2014, pet. denied) (mem. op.) (applying Section 150.002 to corporation that "designed, manufactured, and sold a natural gas, combined cycle generating unit"). We will not read such a limitation into the statute when the plain language does not support it. *See Pedernal Energy*, 536 S.W.3d at 492.

We are also not persuaded by the plaintiffs' argument that the defendants cannot seek dismissal under Section 150.002 because they did not actually provide engineering services for the pipeline construction project or identify the specific engineers who did. Section 150.002's plain language applies to allegations of action or inaction arising out of the provision of professional services. TEX. CIV. PRAC. & REM. CODE § 150.002(b) (requiring certificate of merit to detail "the negligence, if any, or other action, error, *or omission* of the licensed or registered professional in providing the professional service, including any error *or omission* in providing advice, judgment, opinion, or a similar professional skill" (emphasis added)); *see also Conjunctive/Disjunctive Canon*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("in a legal instrument . . . *or* joins a disjunctive list to create alternatives"). Courts

have applied Section 150.002 to claims alleging failures to act that arise out of the provision of professional services. *See UOP, L.L.C. v. Kozak*, No. 01-08-00896-CV, 2010 WL 2026037, at *8–9 (Tex. App.—Houston [1st Dist.] May 20, 2010, no pet.) (mem. op.); *see also Found. Assessment, Inc. v. O'Connor*, 426 S.W.3d 827, 834–35 (Tex. App.—Fort Worth 2014, pet. denied). And even when the defendant denied providing the professional services. *See AMEC Foster Wheeler USA Corp. v. Goats*, No. 09-18-00477-CV, 2019 WL 3949466, at *2, 4 (Tex. App.—Beaumont Apr. 9, 2019, no pet.) (mem. op.) (holding that Chapter 150 applied to claims even though defendant denied in discovery that it participated in design or construction of system at issue); *TDIndus., Inc. v. Citicorp N. Am., Inc.*, 378 S.W.3d 1, 6 (Tex. App.—Fort Worth 2011, no pet.) (holding that Chapter 150 applied even when defendant denied having any engineering obligations); *see also Carter & Burgess, Inc. v. Sardari*, 355 S.W.3d 804, 811 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that defendant's contention that it lacked a contractual duty to inspect did not imply an admission that it was not providing professional services).

We also find no language in the statute requiring a defendant to identify the specific individuals who perform the professional engineering services before moving to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 150.002. Courts determine Section 150.002's application from a plaintiff's pleading—not from the defendant's answer or motion. *Id.* §§ 150.002(a) (requiring filing of certificate of merit "with the

15

complaint"); .002(d) (excusing defendant from answering until 30 days after certificate of merit is filed); *TDIndus.*, 378 S.W.3d at 6 ("[T]he determination of whether a certificate of merit is required is determined at the time the claim is filed, before any discovery.").

## 2. The plaintiffs' claims arise out of the provision of professional engineering services

We conclude that the plaintiffs' claims arise out of the provision of professional services. In doing so, we look to the definition of the "practice of engineering" in the Occupations Code and to the allegations in the plaintiffs' live pleadings when the MDL court ruled on the motion to dismiss, which are the *Evans* parties' third amended petition and the MDL petition. *See CBM Eng'rs*, 403 S.W.3d at 343; *Jennings, Hackler & Partners v. N. Tex. Muni. Water Dist.*, 471 S.W.3d 577, 581 (Tex. App.—Dallas 2015, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE § 150.001(3). The "practice of engineering" has "the meaning assigned by Section 1001.003" of the Occupations Code. TEX. CIV. PRAC. & REM. CODE § 150.001(3); *see* TEX. OCC. CODE § 1001.003. It is "the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work." TEX. OCC. CODE § 1001.003(b). That includes:

(1)     consultation, investigation, evaluation, analysis, planning, engineering for program management, providing an expert engineering opinion or testimony, engineering for testing or evaluating materials for construction or other engineering use, and mapping;

(2)     design, conceptual design, or conceptual design coordination of engineering works or systems;

(3)     development or optimization of plans and specifications for engineering works or systems;

(4)     planning the use or alteration of land or water or the design or analysis of works or systems for the use or alteration of land or water;

(5)     responsible charge of engineering teaching or the teaching of engineering;

(6)     performing an engineering survey or study;

(7)     engineering for construction, alteration, or repair of real property;

(8)     engineering for preparation of an operating or maintenance manual;

(9)     engineering for review of the construction or installation of engineered works to monitor compliance with drawings or specifications;

(10)   a service, design, analysis, or other work performed for a public or private entity in connection with a utility, structure, building, machine, equipment, process, system, work, project, or industrial or consumer product or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature;

(11)   providing an engineering opinion or analysis related to a certificate of merit under Chapter 150, Civil Practice and Remedies Code; or

(12)   any other professional service necessary for the planning, progress, or completion of an engineering service.

*Id.* § 1000.003(c).

The umbrella of the "practice of engineering" under the Occupations Code is "rather expansive" and "casts a large shadow." *Whitaker v. R2M Eng'g, LLC*, 603 S.W.3d 530, 534, 538 (Tex. App.—Amarillo 2020, pet. denied); *see also* TEX. OCC. CODE § 1001.004 (courts should "liberally construe[]" the chapter regulating the practice of engineering "to carry out the intent of the legislature"). But reading the statute as a whole, Section 150.002 does not apply to every claim against a licensed or registered professional, but only to those claims arising out of the provision of professional engineering services—that is, services requiring the engineer's use of education, training, and experience in applying special knowledge or judgment. *See* TEX. OCC. CODE § 1001.003(b); *Dunham Eng'g*, 404 S.W.3d at 793.

We consider the substance of the pleading allegations rather than a party's characterization of those allegations. *Sardari*, 355 S.W.3d at 810; *see also V.R. & Sons, L.P. v. Cive Consulting, Inc.*, No. 01-11-00967-CV, 2012 WL 3133605, at *3 (Tex. App.—Houston [1st Dist.] Aug. 2, 2012, no pet.) (mem. op.) ("[T]he label applied to the role performed by [defendants] is not dispositive of whether they . . . qualified as 'licensed . . . professionals' for purposes of Chapter 150's requirement of a certificate of merit . . . To make that determination, we must consider the nature of the services at issue."); *UOP*, 2010 WL 2026037, at *7–8 ("[T]he failure-to-warn claim, whether alleged against [defendant] in its capacity as a designer or general contractor, was a claim for damages arising out of the provision

of professional services[.]"); *Lantz v. Higgins*, No. 01-14-00208-CV, 2015 WL 1501790, at *2–3 (Tex. App.—Houston [1st Dist.] Mar. 31, 2015, no pet.) (mem. op.) (rejecting plaintiff's characterization of type of services provided). Even if a plaintiff alleges specific acts that do not fall within statutory definitions, Chapter 150 still applies if they arise out of the provision of professional services. *Terracon Consultants, Inc. v. N. Pride Commc'ns, Inc.*, No. 01-22-00755-CV, 2023 WL 2316351, at *6 (Tex. App.—Houston [1st Dist.] Mar. 2, 2023, no pet.) (mem. op.). "Arising out of" is given its ordinary meaning—"to originate; to stem (from) . . . to result (from)." *Id*. at *4.

The plaintiffs argue that Section 150.002 does not apply because the basis of their claims rest on physical construction of the pipelines and the rudimentary way soil is filled back into a hole after construction, which does not require an engineer's use of education, training, experience in applying special knowledge, or judgment, and thus does not fall under the practice of engineering. But their pleadings allege something more.

In their live pleadings, the *Evans* parties and the other MDL parties make several allegations related to project planning and management and pre-construction measurement and analysis. For instance, they allege that Enterprise Products and Oiltanking were involved in the direction, construction, and/or planning of the pipelines. And that before construction, all defendants failed to "measure or analyze

19

the natural contour of the surface within and around the CenterPoint easement." The pleadings also implicate analysis of structural integrity, material evaluation, and measurement and analysis of surface contour when they allege that, after construction, all defendants failed to return the CenterPoint easement to a state of structural integrity, utilized improper soil, and "did not measure or analyze the natural contour of the surface to determine whether it had been altered."

More specifically, the pleadings allege negligence against the Enterprise companies based on a breach of their duty to "take reasonable actions during the design and construction of the pipeline" to "eliminate damage, nuisance, and/or adverse impact to [the plaintiffs'] property" by, among other things,

- failing to develop a construction method that preserved the structural integrity of the soil covering the pipeline, the composition of the topsoil, and the natural flow of surface water within and away from the CenterPoint easement;

- failing to mitigate the adverse impact of construction activities, such as compaction of the soil and the diversion of surface water;

- failing to return the CenterPoint easement, including its soil and topsoil, to its condition before the construction;

- failing to warn of the adverse impact of the pipeline construction;

- failing to include mitigation measures, "including but not limited to levees, trenches, and drainage systems to prevent the diversion of surface water onto [their] property;" and

- failing to plan and develop a suitable SWPPP that would comply with state, county, and city flood control management practices and be compatible with community storm water drainage systems.

20

They allege the CenterPoint companies were negligent in several of the same respects, including by failing to mitigate the adverse impact of the soil compaction and water runoff; failing to return the CenterPoint easement to its previous condition; failing to warn; and failing to supervise the project or maintain adequate control over the Enterprise companies and Troy Construction to avoid property damage. The plaintiffs also assert that the diversion of water onto their property was negligence per se because it violated Section 11.086 of the Water Code. *See* TEX. WATER CODE § 11.086 ("No person may divert . . . the natural flow of surface waters in this state . . . in a manner that damages the property of another . . . .").

The rest of the plaintiffs' claims arise out of the same alleged omissions related to the pipeline construction. For instance, the plaintiffs allege that the defendants owed a duty to hire, supervise, and train employees to ensure that the natural flow of surface water across the CenterPoint easement was not diverted onto adjacent properties. And that the diversion of water to their properties is a nuisance and a trespass. They also allege that the defendants "knew to a reasonable certainty, or in the exercise of ordinary care should have known, that the construction of the pipelines *without any reasonable actions* to eliminate the diversion of surface water and the damage, nuisance, trespass, and/or adverse impact, would detrimentally affect nearby properties." Finally, the fraud by nondisclosure claim alleges that the defendants "concealed or failed to disclose certain facts to plaintiffs pertaining to

21

change to topsoil, soil structure, and surface water flow that would result from the construction of the pipeline at issue."

These alleged omissions by the Enterprise companies, the CenterPoint companies, and Troy Construction involved more than just the physical construction of the pipelines and moving of soil. They also involved planning, measuring, analysis, project management, and mitigation efforts from pre-construction through post-construction activities. Analysis of structural integrity, material evaluation, and surface contour describe activities that fit within the definitions of the practice of engineering. *See, e.g.*, TEX. OCC. CODE § 1001.003(c)(4), (7).

We thus conclude that, as pleaded, the action is one for damages arising out of the provision of professional services by a licensed or registered professional. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(a). Accordingly, the plaintiffs were required to file a proper certificate of merit.

**D.** **The collective assertions of actions, errors, and omissions in the Sanders certificates do not comply with Section 150.002**

Having concluded that a certificate of merit was required, we turn to whether the plaintiffs' certificates were sufficient. Section 150.002(b) requires a certificate of merit to "set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or

22

omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim." *Id.*

The statute "'does not allow for collective assertions of negligence' in the certificate of merit." *T & T Eng'g Servs., Inc. v. Danks*, No. 01-21-00139-CV, 2022 WL 3588718, at *7 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, pet. denied) (mem. op.) (quoting *Robert Navarro & Assocs. Eng'g, Inc. v. Flowers Baking Co. of El Paso, LLC*, 389 S.W.3d 475, 482 (Tex. App.—El Paso 2012, no pet.)); *Macina, Bose, Copeland & Assocs. v. Yanez*, No. 05-17-00180-CV, 2017 WL 4837691, at *7–8 (Tex. App.—Dallas Oct. 26, 2017, pet. dism'd) (mem. op.). Instead, the certificate of merit must specifically address "the conduct of the professional who provided the service at issue," and "identify each defendant and that defendant's specific conduct." *T & T Eng'g Servs.*, 2022 WL 3588718, at *7. "In a case involving multiple defendants, the court must be able to determine which acts or omissions should be ascribed to which company, or the certificate of merit should opine that both companies were involved in all aspects of the work." *Id.* (quotation omitted); *see, e.g.*, *Res. Planning Assocs., LLC v. Sea Scout Base Galveston & Point Glass, LLC*, No. 01-19-00965-CV, 2021 WL 1375797, at *16–17 (Tex. App.—Houston [1st Dist.] Apr. 13, 2021, pet. denied) (mem. op.) (holding certificate of merit sufficient when certificate contained "numerous alleged acts and omissions with

respect to the design drawings, and [expert] specified in his affidavit that *both RPA and Shipley sealed* the documents").

### 1.    The *Evans* parties

The *Evans* parties' live petition at the time the MDL court ruled on the motions to dismiss was the third amended petition. No certificate of merit was filed with the third amended petition. Instead, the *Evans* parties relied on their previously filed certificates. As to the original three defendants (CenterPoint Energy, Oiltanking, and Enterprise Products), the *Evans* parties relied on the original Sanders certificate filed with their original petition. As to the rest of the defendants, the *Evans* parties rely on the second Sanders certificate filed with their first amended petition naming those defendants but referenced in the third amended petition. The defendants contend there are open questions on whether the *Evans* parties may rely on previously filed certificates for amended pleadings. But we do not have to answer those questions because both the original and second Sanders certificates fail to differentiate between the professional errors and omissions of each defendant and thus are deficient.

The original Sanders certificate is five paragraphs long. Only two paragraphs concern the alleged "negligence, if any, or other action, error, or omission of the licensed or registered professional." TEX. CIV. PRAC. & REM. CODE § 150.002(a). In full, those paragraphs state:

24

4. After reviewing the facts of Plaintiffs' theories of recovery for which damages are sought, I have identified the following negligent acts or omissions of licensed or registered professionals working for or at the direction of Defendants Enterprise [Partners], Oiltanking . . . , *and/or* CenterPoint Energy, as follows:

   a. Failing to adequately or appropriately design the pipeline at issue to prevent the diversion of surface water away from the pipeline and into the neighborhoods of Sterling Green, Sterling Green South, Sterling Wood, Overbluff Meadow, and Channelwood;

   b. Failing to develop a method of construction of the pipeline that preserves the structural integrity of soil covering the pipeline, the composition of topsoil, and the natural flow of surface water over and into CenterPoint Energy's pipeline easement;

   c. Failing to mitigate damages, nuisance, and/or adverse impact as the result of the diversion of surface water into the neighborhoods of Sterling Green, Sterling Green South, Sterling Wood, Overbluff Meadow, and Channelwood;

   d. Failing to warn Plaintiffs, Class Members, and the surrounding public of the damage and adverse impact that would result from the construction of the pipeline at issue.

5. The factual basis for such claims is apparent given that surface water is diverted away from CenterPoint Energy's pipeline easement onto adjacent properties and into the neighborhoods of Sterling Green, Sterling Green South, Sterling Wood, Overbluff Meadow, and Channelwood, which began only after the construction of Enterprise [Partners'] and Oiltanking's . . . pipeline.

(Emphasis added.)

25

In its two relevant paragraphs, the second Sanders certificate makes similar statements about the rest of the Enterprise companies, CenterPoint Electric, and Troy Construction, except that it adds detail about the factual bases of Sanders's opinions and identifies another failure on the part of those defendants. Sanders states:

4.	I have examined the facts of Plaintiffs' theories of recovery for which damages are sought, including reviewing the characteristics of the land at issue and the utility corridor including powerlines and multiple pipelines adjacent to multiple residential neighborhoods. This review included pipeline drawings, local photographs, aerial imagery, and soils classification data. I have identified evidence of the following faults or omissions of licensed or registered professionals working for or at the direction of Defendants Troy Construction . . . ; Enterprise [Ship Channel LP]; Enterprise [Ship Channel GP]; Enterprise Terminaling . . . ; CenterPoint [Electric]; *and/or* Enterprise [Holdings] as follows:

a.	Failing to adequately or appropriately design the pipeline at issue to prevent the diversion of surface water away from the pipeline and into the neighborhoods located in or around Channelview, Texas, and bounded as follows: North of Interstate 10; South of Moore Road; East of Texas 8 Beltway; and West of Sheldon Road;

b.	Failing to plan and develop a suitable Storm Water Pollution Prevention Plan (SWPPP) including Best Management Practices for the addition of the new pipeline within this existing pipeline and utility corridor that would be in compliance with Texas, Harris County, and City of Houston flood control management for compatibility and protection of neighboring community storm water drainage systems;

c.	Failing to develop a method of construction of the pipeline that preserves the structural integrity of soil covering the pipeline, assures the compositional integrity of topsoil, best practices for erosion and sedimentation control for the

26

natural flow of surface water over and along the pipeline easement at issue;

d. Failing to mitigate damages, nuisance, and/or adverse impact as the result of the diversion of surface water into the neighborhoods located in or around Channelview, Texas, and bounded as follows: North of Interstate 10; South of Moore Road; East of Texas 8 Beltway; and West of Sheldon Road;

e. Failing to warn Plaintiffs, Class Members, and the surrounding public of the damage and adverse impact that would result from the construction of the pipeline at issue.

5. The factual basis for such claims is evidenced from my review of public information concerning the layout of the pipeline corridor and neighboring communities, the pipeline(s) at issue, the manner in which the pipeline(s) was constructed, status of restoration of pipeline construction with competent practices for erosion and sedimentation control, and by the apparent surface water diversion away from the pipeline easement at issue and onto adjacent properties and into the neighborhoods located in or around Channelview, Texas, and bounded as follows: North of Interstate 10; South of Moore Road; East of Texas 8 Beltway; and West of Sheldon Road, which began only after construction of the pipeline(s) at issue.

(Emphasis added.)

The emphasized "and/or" statements in both the original and second Sanders certificates prohibit the courts from ascribing any particular fault or omission to any particular defendant. That is, because "and/or" is generally understood to mean "both or either," its inclusion in the original and second Sanders certificates could ascribe the alleged faults and omissions to any one of the listed defendants or all of them. *See Horseshoe Bay Resort, Ltd. v. CRVI CDP Portfolio, LLC*, 415 S.W.3d

27

370, 377 (Tex. App.—Eastland 2013, no pet.); *Sedillo v. Valtierra*, 115 S.W.3d 52, 53 (Tex. App.—San Antonio 2003, pet. denied); *see also* And/or, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/and%2For, accessed Dec. 17, 2024 ("and/or" is "used as a function word to indicate that two words . . . are to be taken together or individually"); And/or, RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY 49 (2nd ed. 1999) ("and/or" is "used to imply that either or both of the things mentioned may be affected or involved"). As the Texas Supreme Court has recognized, "[t]he term inherently leads to ambiguity and confusion." *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 689 (Tex. 2012) (orig. proceeding).

An "and/or" statement was problematic in another certificate-of-merit case involving multiple defendants. In *Robert Navarro*, the plaintiff was building a warehouse with help from two engineering companies—Navarro and Bath—on drawings, specifications, and other construction documents. 389 S.W.3d at 476. Navarro's drawings showed that water and sewer lines existed at the construction site, and Bath assured the plaintiff that the lines existed. *Id.* at 477. But there were no water or sewer lines. *Id.* The plaintiff alleged that Navarro breached its contract and was negligent for including water and sewer connections in its drawings without confirming the lines existed, and that Bath negligently misrepresented that the connections existed when they did not. *Id.* at 477–78. The plaintiff filed a sworn

28

certificate of merit from a licensed professional engineer stating that "the failure to confirm the actual location and existence of the water and sewer lines that were indicated [in the project documents] constitutes professional negligence by [Navarro] *and/or* Bath." *Id.* at 480 (emphasis added). The El Paso Court of Appeals concluded that the certificate of merit was defective because

> if Bath sealed the Project Documents, it may bear liability for negligence. But Bath was sued for negligent misrepresentation, a totally separate tort requiring different elements of proof. If Navarro did not seal the drawing, it may or may not bear liability for breach of contract or negligence. One cannot ascertain the nuanced distinctions based upon [the engineer's] affidavit.

*Id.* at 482 (citation omitted). Further, the court said, "It cannot be presumed that anytime two defendants are accused of similar conduct that valid claims exist against both of them." *Id.* If such claims do exist, "the expert must actually say so[.]"

The original and second Sanders certificates compel the same conclusion here because they lump multiple defendants together and list the allegations with no attribution to any particular defendant. *See James Deaver Servs.*, 2022 WL 4137305, at *5 ("[T]he certificate of merit should identify the professional errors or omissions and their factual basis *of each defendant* or expressly state that all defendants were involved in every aspect of the work." (emphasis added)). The use of "and/or" to join the defendants creates more uncertainty as to what alleged wrongs the *Evans* parties attribute to each defendant. *See Robert Navarro*, 389 S.W.3d at 481–82. Even if we accept that, as regards the original Sanders certificate, CenterPoint Energy is

29

the only remaining defendant after Enterprise Products and Oiltanking were dropped in the seconded amended MDL petition, the "and/or" statement prevents any nuanced distinction between the alleged faults and omissions of CenterPoint Energy and Enterprise Products and Oiltanking. The same is true for the second Sanders certificate that, even after the most recent MDL pleading amendment, still concerns two Enterprise companies, two CenterPoint companies, and Troy Construction.

The *Evans* parties assert that their pleadings make clear their contention that each defendant is responsible for the failure to construct the pipeline in a way that preserved the natural flow of surface water along the CenterPoint easement. But, while broad, the third amended petition does not state that each defendant was involved in all aspects of the work, and it alleges some different acts against the defendants. This makes the *Resource Planning* case relied on by the plaintiffs distinguishable. *See* 2021 WL 1375797, at *12. There, the expert opined that he was "not aware of the division of responsibilities between the two Architects" and based his collective assertions against both defendants on the fact that "each affixed a seal to the documents at issue but did not identify any specific portions of the documents that each prepared." *Id.* at *16. He also expressly stated that both defendants were involved in all aspects of the work. *Id.* at *17.

The *Evans* parties also assert that even if the "and/or" statement creates some ambiguity, they pleaded an alter ego theory that excuses collective assertions of

negligence. In support, they cite this Court's opinion in *Howe-Baker Engineers, Ltd. v. Enterprise Products Operating, LLC*, No. 01-09-01087-CV, 2011 WL 1660715, at *1 (Tex. App.—Houston [1st Dist.] Apr. 29, 2011, no pet.) (mem. op.). There, the plaintiff sued two engineering companies related to construction of gas processing plants. *Id.* The defendants moved to dismiss the complaint, contending that the certificate of merit failed to specifically assign negligent acts, errors, or omissions to each individual defendant. *Id.* at *3, 6. Upholding the trial court's denial of defendant's motion to dismiss, the Court held that an earlier version of Section 150.002 did not require the plaintiff to separately attribute acts, errors, or omissions to each defendant where the plaintiff's complaint included allegations of "entirely vicarious" liability. *Id.* at *6. But here, the third amended petition also alleges direct liability theories against all defendants, so *Howe-Baker* is not squarely on point.

In short, because the original and second Sanders certificates lump the defendants together and go on to list the allegations without any attribution to a particular defendant or statement that all defendants were involved in all aspects of the work, something this Court has held improper, the certificates are deficient. *See James Deaver Servs.*, 2022 WL 4137305, at *5; *see also Robert Navarro*, 389 S.W.3d at 481–82; *cf. Res. Planning Assocs.*, 2021 WL 1375797, at *17 ("Here, . . . Coltzer testified that RPA and Shipley were involved in all aspects of

31

the work and in the errors and omissions he outlined."). We therefore sustain the defendants' issue as to the *Evans* parties.

## 2. The other MDL parties

The MDL parties' petition relies on the third Sanders certificate, which we note does not include an "and/or" statement and provides in relevant part:

4. I have examined the facts of Plaintiff's theories of recovery for which damages are sought, including reviewing the characteristics of the land at issue and the utility corridor including powerlines and multiple pipelines adjacent to multiple residential neighborhoods. This review included pipeline drawings, local photographs, aerial imagery, and soils classification data. I have identified evidence of the following faults or omissions of licensed or registered professionals working for or at the direction of Defendants Enterprise [Partners]; Enterprise [Ship Channel LP]; Oiltanking . . . ; Enterprise [Ship Channel GP]; Enterprise Terminaling . . . ; Enterprise [Holdings]; CenterPoint Energy; CenterPoint [Electric]; and Troy Construction . . . as follows:

   a. Failing to adequately or appropriately design the pipeline at issue to prevent the diversion of surface water away from the pipeline and onto the nearby and adjacent properties located in or around Channelview, Texas;

   b. Failing to plan and develop a suitable Storm Water Pollution Prevention Plan (SWPPP) including Best Management Practices for the addition of the new pipeline within this existing pipeline and utility corridor that would be in compliance with Texas, Harris County, and City of Houston flood control management for compatibility and protection of neighboring community storm water drainage systems;

   c. Failing to develop a method of construction of the pipeline that preserves the structural integrity of soil covering the pipeline, assures the compositional integrity of topsoil,

32

best practices for erosion and sedimentation control for the natural flow of surface water over and along the pipeline easement at issue;

d.      Failing to mitigate damage, nuisance, and/or adverse impact as the result of the diversion of surface water onto the nearby and adjacent properties [sic] neighborhoods located in or around Channelview, Texas;

e.      Failing to warn Plaintiff and the surrounding public of the damage and adverse impact that would result from the construction of the pipeline at issue.

5.      The factual basis for such claims is evidenced from my review of public information concerning the layout of the pipeline corridor and neighboring communities, the pipeline(s) at issue, the manner in which the pipeline(s) was constructed, status of restoration of pipeline construction with competent practices for erosion and sedimentation control, and by the apparent surface water diversion away from the CenterPoint easement and onto nearby and adjacent properties located in or around Channelview, Texas, which began only after the construction of the pipeline(s) at issue.

6.      The factual basis for the claims is something I have also reviewed in the context of the [*Evans* lawsuit,] wherein I previously provided an Expert Opinion Affidavit . . . . Paragraphs 1 and 8 through 16 of my Expert Opinion Affidavit . . . are incorporated herein by reference and attached hereto as Exhibit A-2, with the exception of opinions related to class certification in that case.

Paragraph 1 of the incorporated expert report addresses Sanders's qualifications, knowledge, and experience as a licensed professional engineer.[7] And

---

[7]    The defendants question whether, in determining the sufficiency of the third Sanders certificate, this Court may consider Sanders's expert report or is constrained to the four corners of Sanders's affidavit. This Court has previously considered documents discussed in and attached as exhibits attached to an expert's certificate of merit when determining the sufficiency of the certificate. *See Bratton v. Pastor, Behling & Wheeler, L.L.C.*, No. 01-23-00015-CV, 2024 WL 1662391, at *7 n.7, *8 n.8 (Tex.

paragraphs 8 through 16 provide summaries of both facts and opinions. Specifically, paragraphs 8 through 11 detail the history of the CenterPoint easement and the development of the communities along the easement; regulatory guidelines and standards for the design and construction of pipelines and stormwater management; industry practices related to soil management for pipeline construction, preconstruction planning, installation, restoration, soil compaction mitigation, revegetation, maintenance, and drainage considerations; and certain engineering principles.

In the summary of his opinions, Sanders makes several statements specific to "Enterprise," "CenterPoint," or Troy Construction. For instance, he states:

> It is my opinion that CenterPoint failed to manage Enterprise and their Contractor to assure pipeline design standards to protect neighboring communities along the Right of Way from flooding by diversion of surface water onto those properties.

> It is my opinion that Enterprise did not perform proper pipeline integrity management and risk assessments to protect adjacent properties, structures, businesses, and communities from the consequences of deficient soil treatment and permanent restoration for adequate detention and drainage following construction of the subject pipeline.

> It is my opinion that Troy Construction failed to provide adequate construction techniques that caused improper trench spoil methods, excessive compacted backfill with high density clay across

App.—Houston [1st Dist.] Apr. 18, 2024, pet. denied) (mem. op.). Sanders's expert report is attached to his certificate of merit, and the certificate of merit incorporates specific provisions of the expert report by reference. We thus consider the certificate of merit and the attached and incorporated portions of his expert report. *See id.*

34

the disturbed land surface, and inadequate restoration standards for soil revegetation and surface retention that resulted in excessive run-off to other property off the Right of Away.

These opinions sufficiently separate Troy Construction from the concern for collective assertions of negligence. But, as to the Enterprise companies and the CenterPoint companies, the opinions do not cure the deficiency of collective allegations. While the expert report includes more detailed allegations about the defendants' alleged failures, like the original and second Sanders certificates, the report makes only collective allegations against "Enterprise" and "CenterPoint," without specifying which of the five Enterprise companies or two CenterPoint companies is intended. Even considering the most recently amended MDL pleadings that drop some defendants, two Enterprise companies and two CenterPoint companies remain. Like the original and second Sanders certificates, the third Sanders certificate provides no basis for the courts to conclude that the MDL parties' claims are not frivolous as to each defendant and should "proceed in the ordinary course to the next stages of litigation." *See T & T Eng'g Servs.*, 2022 WL 3588718 at *10 (quoting *CBM Eng'rs*, 403 S.W.3d at 346).

We sustain the defendants' issue as to the MDL parties for the Enterprise companies and the CenterPoint companies only. We overrule the issue as to Troy Construction.

## Conclusion

We reverse the trial court's order denying (1) all defendants' motions to dismiss as to the *Evans* parties and (2) the Enterprise companies' and CenterPoint companies' motions to dismiss as to the other MDL parties. We remand to the MDL court for entry of an order of dismissal and a determination of whether such dismissal is to be with or without prejudice.[8] We affirm the remainder of the trial court's order denying Troy Construction's motions to dismiss.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.

---

[8] Section 150.002(e) requires a court to dismiss a suit accompanied by a deficient certificate of merit but grants the discretion to do so with or without prejudice. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(e) (providing that dismissal "may" be with prejudice); *LaLonde*, 593 S.W.3d at 225 (explaining that "right to dismissal under section 150.002 is clear and unequivocal" but that dismissal "may be with or without prejudice, a matter within the trial court's discretion"); *Pedernal Energy*, 536 S.W.3d at 496 (holding that whether to dismiss with or without prejudice lies within the trial court's discretion); *TRW Eng'rs*, 608 S.W.3d at 324–25 (reversing trial court's order denying motion to dismiss and remanding case for trial court to determine whether dismissal should be with or without prejudice).